**David James OLMSTEAD, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted March 29, 1996.

Decided May 31, 1996.

Reargument Denied July 18, 1996.

Daniel J. Barrett, for Appellant.

Timothy P. Wile, Assistant Counsel In-Charge, and Harold H. Cramer, Assistant Chief Counsel, for Appellee.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

LORD, Senior Judge.

David James Olmstead appeals an order of the Bradford County Court of Common Pleas that dismissed his appeal and upheld the one-year suspension of his driving privilege by the Department of Transportation, Bureau of Driver Licensing (DOT).

On June 29, 1995, Olmstead was convicted in the State of New York of the offense of Driving while ability impaired, a violation of N.Y. Vehicle & Traffic Law, Article 31, § 1192(1). Pursuant to the Driver License

Compact of 1961 (Compact),[1] New York reported its conviction of Olmstead to the Commonwealth of Pennsylvania, his home state. By letter dated August 9, 1995, DOT then informed Olmstead as follows.

> As a result of the Department receiving notification from NEW YORK of your conviction on 06/29/1995 of DRIVING UNDER INFLUENCE[2] on 06/04/1995, which is equivalent to Section 3731 of the Pa. Vehicle Code, your driving privilege is being SUSPENDED for a period of 1 YEAR(S), as mandated by Section 1532B of the Vehicle Code.

(Footnote added).

Section 1532(b)(3) of the Code, 75 Pa.C.S. § 1532(b)(3) affords that "[t]he department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3731[3] (relating to driving under influence of alcohol or controlled substance)...." (Footnote added).

 Olmstead appealed his one-year suspension to the common pleas court, which upheld it. He then petitioned this Court for review, raising these issues: 1) whether the New York offense of "Driving while ability impaired" (DWAI) is substantially similar to the offense in Pennsylvania of "Driving under the influence" (DUI) for purposes of reciprocal suspensions under the Compact; and 2) when deciding if a New York offense is substantially similar to the Pennsylvania offense of DUI, must the court recognize the distinction between New York's "Driving while intoxicated" (DWI) and DWAI statutes.[4]

We will begin by comparing New York's DWAI statute with our own DUI statute. New York's DWAI statute provides:

**§ 1192. Operating a motor vehicle while under the influence of alcohol or drugs**

1. Driving while ability impaired. No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol.

According to Pennsylvania's DUI statute:

**§ 3731. Driving under influence of alcohol or controlled substance**

(a) Offense defined.-A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;

. . . . .

(4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater ...

Olmstead argues that, in New York, impairment to any extent will support a conviction for DWAI and Pennsylvania has no essentially similar offense. He asserts that, instead, Pennsylvania's DUI statute is substantially akin to New York's DWI statute, which affords:

**§ 1192. Operating a motor vehicle while under the influence of alcohol or drugs**

. . . . .

2. Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has .10 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis of such person's blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this article.

---

1. Neither party raises the question of the legality of the Compact.

2. The certified record proves that Olmstead was convicted in New York of the specific offense of "Driving while ability impaired." We caution DOT to be more precise when informing a licensee why his or her driving privilege is being suspended or revoked.

3. Section 3731 of the Code, 75 Pa.C.S. § 3731.

4. Our scope of review of a common pleas court decision in a license suspension appeal is limited to a determination of whether findings of fact are supported by substantial evidence, an error of law was committed, or the court abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Fellmeth*, 108 Pa.Cmwlth. 172, 528 A.2d 1090 (1987).

3. Driving while intoxicated. No person shall operate a motor vehicle while in an intoxicated condition.

The Court of Appeals of New York has explained that DWAI is a lesser included offense of DWI. *See People v. Hoag,* 51 N.Y.2d 632, 435 N.Y.S.2d 698, 416 N.E.2d 1033 (1981). In *People v. Cruz,* 48 N.Y.2d 419, 423 N.Y.S.2d 625, 399 N.E.2d 513 (1979), *appeal dismissed,* 446 U.S. 901, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980), the Court of Appeals elucidated the distinction between when a driver is merely impaired by alcohol or is intoxicated.

In *Cruz,* the Court explained that, with respect to N.Y. Vehicle & Traffic Law, Article 31, § 1192(1), "the question in each case is whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, *to any extent,* the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Id.,* 423 N.Y.S.2d at 628, 399 N.E.2d at 516. (Emphasis added). As to intoxication, for purposes of subdivision 3 of § 1192, the Court explained that it "is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Id.,* 423 N.Y.S.2d at 629, 399 N.E.2d at 517.

N.Y. Vehicle & Traffic Law, Article 31, § 1195(2)(c) provides that a blood alcohol level of more than .07% but less than .10% shall constitute prima facie evidence that a person's ability to operate a motor vehicle was impaired by alcohol consumption. The statute also provides that this range of weight of alcohol in the blood amounts to prima facie evidence that a person was not intoxicated.

While, admittedly, in Pennsylvania a driver need not have a blood alcohol level of .10% before he or she could be convicted of DUI,

in order to support a conviction where there is no evidence to this effect, DOT must prove that the driver, operator or person in actual physical control of the motor vehicle was influenced by alcohol to a degree that he or she could not drive safely. *See Commonwealth v. Byers,* 437 Pa. Superior Ct. 502, 650 A.2d 468 (1994) for DOT's burden of proof under Section 3731(a)(1) of the Code. Certainly, section 3731(a)(1) cannot reasonably be interpreted to define DUI as any alcohol-related impairment, no matter how minor, where that impairment does not affect a person's ability to be a safe driver.

As the trial court recognized, our Supreme Court in *Commonwealth v. Horn,* 395 Pa. 585, 150 A.2d 872 (1959) and again in *Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986) said that the state of being "under the influence" includes, not only all the obvious conditions and degrees of intoxication, but substantial impairment by alcohol of the abilities essential to operating an automobile safely. Further, the Supreme Court explained in *Griscavage* that "substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Its meaning is not limited to some extreme condition of disability." *Id.,* 512 Pa. at 545, 517 A.2d at 1258.

What the trial court in the matter *sub judice* failed to note, however, is that substantial impairment is not of course any impairment, and to this extent our DUI offense differs greatly from New York's DWAI offense, which punishes much less egregious conduct behind the wheel.

Article IV of the Compact affords in relevant part:[5]

**EFFECT OF CONVICTION—**

(1) The licensing authority in the home state, for the purposes of suspension, revocation, or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to

---

5. Note: We quote here from the Driver License

Compact, Administrative Procedures Manual

Article III,[6] as it would if such conduct had occurred in the home state, in the case of convictions for:

. . . . .

(b) Driving a motor vehicle while under the influence of alcoholic beverages or a narcotic to a degree which renders the driver incapable of safely driving a motor vehicle;

. . . . .

(2) As to other convictions, reported pursuant to Article III, the licensing authority in the home state shall give such effect to the conduct as is provided by the laws of the home state.

(Footnote added).

Because New York did not report that Olmstead had driven while under the influence of alcohol to a degree that he was incapable of driving safely, DOT could not under Article IV(1)(b) of the Compact suspend his license as if he had been convicted here of such conduct under Section 3731 of the Code. Further, a person who suffers from any alcohol-related impairment while driving, operating or being in actual physical control of a motor vehicle will suffer no consequences under the law of our Commonwealth if he or she is still capable of being a prudent or safe driver in any case. Therefore, Article IV(2) also cannot justify a suspension of Olmstead's license under section 3731.

Because we agree with Olmstead that a DWAI offense in New York is not substantially similar to a DUI offense in Pennsylvania, we reverse the order of the trial court.

### ORDER

AND NOW, this 31st day of May, 1996, the order of the Court of Common Pleas of Bradford County, No. 95 DL 000360, dated November 1, 1995, is hereby reversed.

1990, provided to us in the certified record.

6. Article III of the Compact concerns reports of conviction from the licensing authority of a party state to the licensing authority of the home state of the licensee.