741 A.2d 1264

Shannon PETROVICK, Appellee,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Philip J. Frantz, Appellee,

v.

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant,

Donald Joseph Eck, Appellee,

v.

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant.

Supreme Court of Pennsylvania.

Argued April 27, 1999.

Decided Dec. 13, 1999.

Timothy P. Wile, Asst. Counsel, Harold H. Cramer, Asst. Chief Counsel, Andrew S. Gordon, Chief Counsel, Dept. of Transp., Paul A. Tufano, Gen. Counsel, for Dept. of Transp. & Com.

Kelly M. Carrubba, Jermyn, for Shannon Petrovick.

Francis X. O'Connor, Great Bend, for Philip J. Frantz.

Angelo T. Almonti, Allentown, for Donald Joseph Eck.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

We granted allocatur in these three consolidated cases to address the effect of an out-of-state conviction under New York's driving while ability impaired (DWAI) statute and Maryland's driving while under the influence (DUI) statute upon a Pennsylvania citizen's driver license privileges pursuant to the Driver License Compact (Compact). The Compact is an agreement among several states to promote compliance with each party state's motor vehicle laws. 75 Pa.C.S. § 1581, Article I(b)(1)–(2). Pennsylvania became a party state to the Compact in 1996 by adopting sections 1581–1585 of the Motor Vehicle Code. In each of these three cases, Pennsylvania's Department of Transportation (PennDOT) revoked the driver's license of a Pennsylvania citizen for an out-of-state conviction. In each case, the Commonwealth Court affirmed the trial court's reversal of PennDOT's suspension of the licenses of Appellees, and directed PennDOT to reinstate Appellees' driving privileges. For the reasons set forth herein, we affirm.

█ Our scope of review of a decision in a license suspension case is to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion. *Commonwealth of Penn., Dept. of Transportation, Bureau of Driver Licensing v. Boucher,* 547 Pa. 440, 691 A.2d 450, 453, *reargument denied* (Pa.1997).

On March 12, 1997, Appellee Shannon Petrovick was convicted in New York of violating N.Y. Veh. & Traf. Law § 1192(1). Appellee Philip Frantz was found guilty of the same offense on August 22, 1997. The New York Department

of Motor Vehicles reported the convictions to PennDOT on March 31, 1997 and September 8, 1997, respectively. Subsequently, PennDOT treated Appellees' out-of-state convictions as if they were violations of Pennsylvania's DUI statute, 75 Pa.C.S. 3731(a), and suspended Appellees' licenses for one year, pursuant to the provisions of the Motor Vehicle Code, 75 Pa.C.S. § 1532(b)(3), which mandates a one-year suspension of the driving privileges of persons who have been convicted of violating 75 Pa.C.S. § 3731. On June 9, 1997, Appellee Donald Eck was convicted in Maryland for driving while under the influence of alcohol in violation of Md.Code, Trans. § 21–902(b). The Maryland Department of Transportation reported Eck's conviction to PennDOT, which, in turn, notified Eck on June 27, 1997 that his driving privileges were being suspended for one year due to his conviction for an offense deemed to be equivalent to 75 Pa.C.S. § 3731.

Initially, we must clarify the appropriate analysis under Article IV of the Compact. Appellant has framed the issue as whether the Pennsylvania drunk driving statute, 75 Pa.C.S. § 3731, is "substantially similar" to the drunk driving provisions under which Appellees were convicted in New York and Maryland. Appellant's characterization of the issue infers an improper analysis. The Compact does not require a comparison of different states' drunk driving statutes. Rather, the relevant inquiry is whether each state's drunk driving provisions are "of a substantially similar nature" to Article IV(a)(2) of the Compact.

Pennsylvania, Maryland and New York are party states to the Compact. Article III of the Compact provides in pertinent part that "the licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee."[1] Pursuant to Article IV(a)(2) of the Compact, when a party state reports a conviction for

1. Article III of the Compact, entitled "Reports of Conviction" provides:
 The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation

"driving a motor vehicle while under the influence of intoxicating liquor ... to a degree which renders the driver incapable of safely driving a motor vehicle," PennDOT must give the same effect to the out-of-state conviction that the licensee would receive if the conviction had occurred within Pennsylvania.

Subsection (c) provides a method to evaluate offenses reported pursuant to subsection (a)(2). Where the laws of a party state do not provide for offenses which are described in precisely the words contained in subsection (a)(2) (i.e., "to a degree which renders the driver incapable of safely driving a motor vehicle"), Article IV(c) authorizes the party state to construe the offense described in subsection (a)(2) as identifying offenses in the party state which are *"of a substantially similar nature"* to (a)(2) (emphasis added).[2]

Thus, the Compact does not call for a direct comparison of Pennsylvania's statute to the out-of-state statute. Rather, the

specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.
75 Pa.C.S. § 1581, Article III.

**2.** Article IV, entitled "Effect of Conviction", provides in pertinent part:
(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:
 * * *
 (2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;
(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.
75 Pa.C.S. § 1581, Article IV.

Compact requires a two-pronged test. First, we must evaluate whether there is a Pennsylvania offense which is "of a substantially similar nature" to the provisions of Article IV(a)(2). Second, we must evaluate whether there is a Maryland or New York offense which is "of a substantially similar nature" to Article IV(a)(2). Both prongs must be satisfied before PennDOT can sanction a Pennsylvania citizen for an out-of-state conviction.[3]

 In order to make the comparison between the out-of-state offense and Article IV(a)(2), we need to understand the meaning of the phrase "driving a motor vehicle while under the influence of intoxicating liquor ... to a degree which renders the driver incapable of safely driving a motor vehicle" in Article IV(a)(2). Pennsylvania's legislature has not defined this phrase. However, similar language is found in Pennsylvania's DUI statute which provides in pertinent part that it is an offense to drive "while under the influence of alcohol to a degree which renders the person incapable of safe driving...." 75 Pa.C.S. § 3731(a)(1).[4] Therefore we can look to

3. We note that some lower courts have discussed the applicability of Article IV(b), which permits the home state to give effect to convictions reported pursuant to Article III (other than those convictions enumerated in Article IV(a)) as if the conduct had occurred in the home state. However, section 10 of the Act of Dec. 10, 1996, P.L. 925, which originally promulgated the provisions of the Compact, states that "[i]n recognition of the technical and administrative limitations under which the Department of Transportation is currently operating, the effective date of Art. IV(b) of this section shall be suspended until the repeal of section 10." Section 10 has not yet been repealed, and subsection (b) has never become effective. Thus, the provisions of Article IV, subsection (b) play no role in this analysis.

4. Pennsylvania's drunk driving statute provides:

(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle in any of the following circumstances:

(1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.

(2) While under the influence of any controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, to a degree which renders the person incapable of safe driving.

Pennsylvania case law interpreting the terminology of section 3731(a)(1) for guidance.[5]

In *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986), this court addressed the sufficiency of evidence pursuant to a violation of 75 Pa.C.S. § 3731. We explained that the term "under the influence of alcohol" in this statute encompasses "all the well known and easily recognized conditions and degrees of intoxication" as well as "any mental or physical condition which is the result of drinking alcoholic beverages and ... substantially impairs his judgment, or clearness of intellect, or any of the normal faculties essential to the safe operation of an automobile." *Id.* at 1258 (*quoting Commonwealth v. Horn*, 395 Pa. 585, 150 A.2d 872, 875 (1959)). In this context, "substantial impairment" indicates "a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Its meaning is not limited to some extreme condition of disability." 517 A.2d at 1258. Thus, while Pennsylvania may not require an extreme condition of disability, it does require "substantial impairment", and that the driver's ability be diminished to an extent that he is incapable of safe driving.

As to the first prong of the test, we find that the provisions of Pennsylvania's DUI statute, specifically section 3731(a)(1) ("incapable of safe driving") are of a substantially similar nature to the provisions of Article IV(a)(2) ("incapable of safely driving"), and therefore PennDOT is entitled to treat

(3) While under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving.

(4) While the amount of alcohol by weight in the blood of:
(i) an adult is 0.10% or greater; or
(ii) a minor is 0.02% or greater.

75 Pa.C.S. § 3731(a)(1)–(4) (footnote omitted).

5. Several of the lower courts have framed the issue as whether Pennsylvania's drunk driving statute and the out-of-state statute are "substantially similar". This analysis is understandable as some of the language of Pennsylvania's DUI statute, 75 Pa.C.S. § 3731(a)(1), is nearly identical to the language of Article IV(a)(2). However, we reiterate that the correct inquiry involves first, a comparison of Article IV(a)(2) to Pennsylvania's drunk driving statute, and then a comparison of the out-of-state statute to Article IV(a)(2).

violations of Article IV(a)(2) as if they were violations of 75 Pa.C.S. § 3731. Turning to the second prong, we must now determine whether the offenses reported by New York and Maryland are "of a substantially similar nature" to Article IV(a)(2). We will address each statute in turn.

### The New York Statute

■ The New York statutory provision at issue states in pertinent part:

§ 1192. **Operating a motor vehicle while under the influence of alcohol or drugs.**

1. Driving while ability impaired. No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol.

2. Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has .10 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis of such person's blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this article.

3. Driving while intoxicated. No person shall operate a motor vehicle while in an intoxicated condition.

N.Y. Veh. & Traf. Law §§ 1192(1)–(3).

In the Petrovick and Frantz appeals, the Commonwealth Court affirmed the trial court's reversal of the suspension based upon its reasoning in *Olmstead v. Dept. of Transportation, Bureau of Driver Licensing,* 677 A.2d 1285 (Pa.Cmwlth. 1996), *aff'd per curiam,* 550 Pa. 578, 707 A.2d 1144 (1998). The appellant in *Olmstead* argued that Pennsylvania had no offense that was essentially similar to New York's DWAI law, N.Y. Veh. & Traf. Law § 1192(1); to the contrary, Pennsylvania's DUI statute, 75 Pa.C.S. § 3731, was substantially akin to a different provision, New York's Driving While Intoxicated (DWI) Law. In order to interpret the provisions of the New York statute, the Commonwealth Court looked to the reasoning in *People v. Cruz,* 48 N.Y.2d 419, 423 N.Y.S.2d 625, 399 N.E.2d 513 (1979), *appeal dismissed,* 446 U.S. 901, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980), in which the Court of Appeals of

New York enunciated the distinctions between impairment under § 1192(1) and intoxication under § 1192(3).

As to impairment under § 1192(1), the Court of Appeals explained that the pertinent inquiry is "whether, by voluntarily consuming alcohol, this particular defendant actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Cruz*, 423 N.Y.S.2d 625, 399 N.E.2d at 516. Intoxication, for purposes of § 1192(3), "is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." 423 N.Y.S.2d 625, 399 N.E.2d at 517. The Commonwealth Court in *Olmstead* concluded that New York failed to report that Olmstead had driven while under the influence of alcohol to a degree that he was incapable of driving safely, and thus, DOT could not suspend his license under Article IV(a)(2).[6] *Id.* at 1288.

The Commonwealth Court in *Olmstead* did not follow the analysis we have set forth today. Nevertheless, we find the distinctions in *Cruz* to be compelling. In rejecting the *Olmstead* court's reasoning, PennDOT's arguments center on why Pennsylvania's statute and New York's statute are substantially similar. First, PennDOT contends that both statutes only require that a licensee's ability to safely operate a motor vehicle be impaired, not intoxicated. In light of the distinctions drawn by the *Cruz* court, we find no merit in this contention. Second, PennDOT claims that the Commonwealth Court in *Olmstead* unduly relied on the BAC levels of the New York statute. To the contrary, we find that the *Olmstead* court properly based its decision upon the distinctions set forth by the *Cruz* court. Third, PennDOT claims that other party states to the Compact have found that New York's DWAI statute is substantially similar to that party state's

---

6. The Commonwealth Court in *Olmstead* quoted from the Driver License Compact, Administrative Procedures Manual, 1990, which contained the provisions of Article IV(a)(2) within Article IV(1)(b).

statute. *See, e.g., Montanye v. State,* 262 Mont. 258, 864 P.2d 1234 (1993); *State v. Regan,* 209 N.J.Super. 596, 508 A.2d 1149 (1986); *Przybyla v. South Carolina Dept. of Highways & Public Transp.,* 313 S.C. 116, 437 S.E.2d 70 (1993). We are not persuaded by the reasoning of any of these cases.

█ PennDOT argues that the recent addition of section 1586 to the Compact indicates the General Assembly's rejection of the Commonwealth Court's reasoning in *Olmstead* and its progeny. Section 1586, entitled "Duties of Department", provides:

> The department shall, for purposes of imposing a suspension or revocation under Article IV of the compact, treat reports of convictions received from party states that relate to driving, operating or being in actual physical control of a vehicle while impaired by or under the influence of alcohol, intoxicating liquor, drugs, narcotics, controlled substances or other impairing or intoxicating substance as being substantially similar to section 3731 (relating to driving under influence of alcohol or controlled substance). The fact that the offense reported to the department by a party state may require a different degree of impairment of a person's ability to operate, drive or control a vehicle than that required to support a conviction for a violation of section 3731 shall not be a basis for determining that the party state's offense is not substantially similar to section 3731 for purposes of Article IV of the compact.

75 Pa.C.S. § 1586, 1998, Dec. 21, P.L. 1126, No. 151, § 21, imd. effective.

█ PennDOT argues that this section should be persuasive, even if, as PennDOT concedes, it is not directly applicable to cases heard prior to December 21, 1998, the date upon which the amendment became effective. However, our rules of statutory construction provide that the new provision shall be construed as effective only from the date upon which the amendment became effective. 1 Pa.C.S. § 1953. The legislature cannot create retroactive authority by passing "clarifying" legislation. *Commonwealth v. Shaffer,* J–181A–

1998 (*citing St. Joseph Lead Co. & Koppers Co., Inc. v. Potter Township*, 398 Pa. 361, 157 A.2d 638, 642 (1959)). Rather, an amendment to a statutory provision can be applied retroactively only if the General Assembly specifically provides for such application in the provisions of the statute, *Commonwealth v. Scoleri*, 399 Pa. 110, 160 A.2d 215, 227(Pa.), *cert. denied*, 364 U.S. 849, 81 S.Ct. 93, 5 L.Ed.2d 72 (1960), or if the legislation is a procedural law, rather than a substantive law which affects a party's rights. *See Morabito's Auto Sales v. Dept. of Transportation*, 552 Pa. 291, 715 A.2d 384, 386 (1998) (citation omitted). Because the General Assembly did not provide for retroactive application of section 1586, and because retroactive application of this amendment likely would affect the substantive rights of Appellees, we cannot base our decision on this provision.

■ We may affirm the decision of a lower court "if the result is correct on any ground without regards to the grounds which the trial court itself relied upon." *E.J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610, 381 A.2d 441, 443 n. 4 (1977). Although the lower courts in the Frantz and Petrovick appeals erred in their analyses, we conclude that they correctly determined that New York's DWAI law does not provide a basis for reciprocal suspension for purposes of Article IV of the Driver License Compact.[7]

### The Maryland Statute

■ The Maryland statutory provision at issue states in pertinent part:

§ 21–902.

(a) Driving while intoxicated.—

(1) A person may not drive or attempt to drive any vehicle while intoxicated.

(2) A person may not drive or attempt to drive any vehicle while the person has an alcohol concentration

---

7. Because of our resolution of this matter, we will not address Frantz's additional claim that the suspension was invalid because the conviction report sent by the licensing authority of New York was not sufficiently specific for purposes of Article III of the Compact.

of 0.10 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath as determined at the time of testing.

(b) Driving while under the influence of alcohol.—A person may not drive or attempt to drive any vehicle while under the influence of alcohol.

(c) Driving while under influence of drugs or drugs and alcohol.—

(1) A person may not drive or attempt to drive any vehicle while he is so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that he cannot drive a vehicle safely.

Md.Code, Trans. § 21–902(a)–(c)(1).

The Maryland legislature has not defined the term "under the influence of alcohol", and neither of the parties have directed us to relevant Maryland case law interpreting the phrase. A recent decision of a federal district court in Maryland has interpreted "driving under the influence of alcohol" as "driving a motor vehicle when an individual's normal judgment, perception, and/or coordination was adversely affected; that is, made worse *to any extent* by the consumption of an alcoholic beverage." *United States v. Sauls*, 981 F.Supp. 909, 919 (D.Md.1997) (emphasis added).[8]

**8.** We acknowledge that in *Alston v. Forsythe*, 226 Md. 121, 172 A.2d 474 (1961), the Court of Appeals of Maryland implicitly referred to "under the influence of alcohol" as "drinking to the extent of probably affecting one's judgment and discretion or probably affecting one's nervous system to the extent that there is a failure of normal coordination, although not amounting to intoxication." *Id.* at 479 (*quoting Clay v. State*, 211 Md. 577, 128 A.2d 634, 638 (1957)); *see also Brooks v. State*, 41 Md.App. 123, 395 A.2d 1224, 1227 n. 3 (1979) (analogizing *Clay* definition to "driving while ability impaired" statute, the predecessor of the current "driving while under the influence of alcohol" statute). However, as the Court of Special Appeals noted, "the tests enumerated in *Alston* were applicable to [a predecessor of the current statute], which set forth a more serious offense than that established in the present impaired driving statute, section 11–902(b) of Art. 66½ [the predecessor of current section 21–902(b), driving while under the influence]." *Carter v. Correa*, 28 Md.App. 397, 346 A.2d 481, 488 (1975), *cert. denied*, 276 Md. 739 (Md.1976). *Carter* further stated that "[t]he present statute setting forth the more serious offense is section

Moreover, in interpreting an earlier version of the statute, the Attorney General of Maryland opined that "proof of unsafe operation is not a necessary element of the offenses of driving while intoxicated or driving while under the influence of alcohol." Opinion No. 83–016, 68 M.D. Op. Atty. Gen. 441 (May 2, 1983). The Attorney General indicated that the fact that the General Assembly did not include the requirement "that he cannot drive a vehicle safely" in sections (a) and (b), while including it in section (c), "implies its deliberate rejection" in the former sections. *Id.* Notably, the current versions of sections (a) and (b) also omit this requirement while section (c) retains it.

Even though § 21–902(b) omits the phrase "to a degree which renders the person incapable of safe driving", PennDOT contends that the two statutes are substantially similar. Applying the appropriate analysis, we find that the difference in the language of the Maryland statute and Article IV(a)(2) is not the salient distinction. Rather, as with the appeals of the New York convictions, it is the effect of the language in defining the scope of the offense which determines whether or not the out-of-state statute is of a substantially similar nature to Article IV(a)(2). The Maryland statute fails to specify the degree to which a person must be under the influence of alcohol, and therefore permits a much lower threshold for culpability; in contrast, Article IV(a)(2) requires that the person be impaired to a degree that he or she is incapable of safely driving.

PennDOT seeks guidance in *Commonwealth v. Robertson*, 555 Pa. 72, 722 A.2d 1047 (1999), wherein, pursuant to the Compact, we addressed whether Maryland's "driving while intoxicated" provision, § 21–902(a) was an "equivalent offense" to Pennsylvania's DUI statute, 75 Pa.C.S. § 3731, for the purpose of sentencing appellant as a repeat offender pursuant to 75 Pa.C.S. § 3731(e)(1)(iv). This court, being equally divid-

11–902(a) of Art. 66½, making it unlawful to drive while in an intoxicated condition." Section 11–902(a) is the predecessor of section 21–902(a), also relating to driving while intoxicated. Thus, we do not find the *Alston/Clay* definition to be controlling in the instant case.

ed, issued an Order affirming the Commonwealth Court's determination that the two statutes were equivalent offenses for purposes of sentencing. The Order was accompanied by an Opinion in Support of Affirmance and an Opinion in Support of Reversal.

PennDOT does not rely on the Opinion in Support of Affirmance, which found that the offense of driving while intoxicated, a different provision of the Maryland statute than the one at issue here, is akin to Pennsylvania's DUI statute. 722 A.2d at 1051 [9] Instead, PennDOT looks to the Opinion in Support of Reversal, which proposed that "[s]ubstantial similarity is satisfied where the statutes of the different jurisdictions proscribe the same general conduct, notwithstanding the fact that the statutes require differing degrees of culpability before criminal liability attaches." *Id.* at 1052. PennDOT's reliance on this opinion is misplaced for two reasons. First, the opinion set forth a test for "substantial similarity" under a different statutory provision than those of the Compact. Second, even if we were to adopt such a definition of "substantial similarity" under the Compact, that test is not satisfied here. Clearly, the same general type of conduct is not proscribed, as the Maryland statute prohibits any amount of impairment, rather than impairment to a degree of being rendered incapable of safely driving.

As with the appeals involving the New York DWAI statute, PennDOT relies on cases in which party states to the Compact have made favorable comparisons between their DUI offenses and other party states' DUI offenses. These decisions are no more persuasive when applied to the Maryland statute.

Accordingly, we affirm the judgment of the Commonwealth Court in all three cases.[10]

**9.** In *Robertson,* we addressed an earlier version of Maryland's drunk driving statute. However, because the former statute retained the distinction between "driving while intoxicated" and "driving while under the influence of alcohol", we find the reasoning in the plurality opinion in *Robertson* to be applicable.

**10.** Appellee Eck argues that the automatic suspension of his license under the Compact violated his constitutional right to equal protection

of the laws. In light of our disposition of this case, we do not reach this issue.