## Walsh v. PennDOT

C.P. of Lackawanna County, no. 99-CV-3991.

*Paul J. Walker,* for petitioner.
*Frank M. O'Neill,* for respondent.

NEALON, *J.,* August 1, 2000—Petitioner, William J. Walsh has appealed the suspension of his driving privileges by the respondent, Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, based upon his conviction in Utah for "driving under the influence." Since the report of Walsh's conviction that PennDOT received from Utah does not identify the particular section of the Utah DUI statute that was violated, it is legally inadequate to support a license suspension in that it cannot be determined whether the conviction was for an offense that warrants a reciprocal suspension under the Driver's License Compact. Therefore, for the reasons set forth below, the one-year suspension of Walsh's operator's license will be reversed.

## I. FACTUAL BACKGROUND

Walsh was reportedly arrested in Utah for driving under the influence on September 19, 1998, and pled guilty

to that offense 11 days later on September 30, 1998. Since Utah and Pennsylvania were both parties to the Driver's License Compact of 1961 at that time, see U.C.A. §§53-3-601 to 604, 75 Pa.C.S. §§1581-1585, the clerk of the Third District Court, Park City, Utah, forwarded an "Out of state abstract conviction" to PennDOT indicating that Walsh pled guilty to DUI and was fined $1,300 for violating "41-6-44." (See Commonwealth exhibit no. 1, p. 4.) In describing the violation, the Utah abstract merely states "41-6-4 driving under the influence of," but does not identify whether Walsh was under the influence of alcohol as opposed to a controlled substance, nor does it specify the exact section of the Utah DUI statute that was violated. Moreover, the abstract report from Utah does not indicate whether Walsh's arrest and subsequent conviction based upon the results of chemical testing, evidence of his unfitness to drive or a refusal to submit to chemical testing.

Under article IV of the compact, PennDOT may suspend or revoke a Pennsylvania motorist's license based upon foreign state convictions for certain motor vehicle offenses that are identical or substantially similar to those offenses identified in subsection (a) of article IV of the compact. Following its receipt of the Utah abstract report, PennDOT forwarded a letter to Walsh on July 13, 1999, which stated:

"Section 1581 of the Vehicle Code requires the department to treat certain out-of-state convictions as though they had occurred in Pennsylvania. Therefore, as a result of the department receiving notification from Utah of your conviction on 09/30/1998 of an offense which occurred on 09/19/1998, which is equivalent to a violation of section 3731 of the Pennsylvania Vehicle

Code, Driving Under Influence, your driving privilege is being Suspended for a period of 1 Year(s), as mandated by section 1532B of the Vehicle Code." (*Id.*, p. 2.)

On August 12, 1999, Walsh filed a timely appeal from his license suspension and asserted that his Utah conviction was for an offense that purportedly is not substantially similar to the violations specified in subsection (a) of article IV of the compact since Utah's DUI statute merely requires a blood alcohol content of .08 percent whereas Pennsylvania law demands a level of .10 percent. Walsh further argues that the Utah report and PennDOT suspension notice are deficient since they do not identify the statutory basis for his conviction. (See petitioner's appeal from suspension of driver's license, ¶¶5-6.) A de novo hearing was conducted on July 18, 2000, at which time PennDOT entered into evidence a packet of certified documents pursuant to section 1516(b) of the Vehicle Code, 75 Pa.C.S. The exhibits introduced by PennDOT include the suspension notice letter dated July 13, 1999, the abstract report that PennDOT received from Utah and a chronological record of Walsh's past motor vehicle violations. Walsh did not offer any testimony or evidence and simply relied upon the oral argument of his counsel that the Utah report was facially defective and that PennDOT had failed to establish that the Utah conviction was a "substantially similar" offense under the compact.

## II. DISCUSSION

### (A) *Standard of Review*

It is well settled that in an appeal to the court of common pleas from a suspension of a driver's license, the

initial burden of proof is on PennDOT to produce a record of the conviction which supports the suspension. *Scott v. PennDOT,* 730 A.2d 539, 543 (Pa. Commw. 1999). In an appeal involving a reciprocal suspension pursuant to the compact, PennDOT also bears the additional burden of proving that the foreign state conviction was for an offense that is substantially similar to article IV(a)(2) of the compact. *Zawacki v. PennDOT,* 745 A.2d 701 (Pa. Commw. 2000). Appellate review of a lower court decision in a license suspension case is limited to determining whether the factual findings of the trial court are supported by competent evidence or whether the lower court committed an error of law or an abuse of discretion. *Petrovick v. PennDOT,* 559 Pa. 614, 617, 741 A.2d 1264, 1265 (1999); *Tarka v. PennDOT,* no. 2940 C.D. 1999, at p. 2 n.2 (Pa. Commw. July 14, 2000).

## (B) *Driver's License Compact*

On December 10, 1996, Pennsylvania joined 37 other states and the District of Columbia in enacting the Driver's License Compact, see *Schrankel v. PennDOT,* 562 Pa. 337, 755 A.2d 690 (2000), which is a contractual agreement among member states seeking to promote compliance with each party state's motor vehicle laws by empowering the licensing authority of a "home state" to revoke or suspend the driver's license of a resident motorist based upon an out-of-state conviction for certain types of motor vehicle offenses. See *Koterba v. PennDOT,* 736 A.2d 761, 763 n.1 (Pa. Commw. 1999), *app. denied,* 561 Pa. 703, 751 A.2d 195 (2000). Under article III of the compact, each state must report a motor vehicle offense conviction occurring within its jurisdiction to the licensing authority of the licensee's home state,

which "report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which the action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith." 75 Pa.C.S. §1581, article III. If the foreign conviction involves an offense which is expressly enumerated in subsection (a) of article IV of the compact including "driving a motor vehicle while under the influence of intoxicating liquor . . . to a degree which renders the driver incapable of safely driving a motor vehicle," the home state licensing authority must provide the same collateral effect to the foreign conviction for purposes of the suspension or revocation of the operator's license. 75 Pa.C.S. §1581, article IV(a)(2). However, if the foreign state conviction is for an offense which is not "described in precisely the language employed in subsection (a)," article IV(c) of the compact permits the licensing state to construe the offenses identified in subsection (a) as including the out-of-state offense only if the foreign law at issue is "of a substantially similar nature" to the offenses delineated in subsection (a). 75 Pa.C.S. §1581, article IV(c).

Effective December 21, 1998, the legislature amended 75 Pa.C.S. §1584 entitled "Furnishing of information to other states" by adding a sentence which reads that "[t]he omission from any report received by [PennDOT] from a party state of any information required by article III of the compact shall not excuse or prevent [PennDOT] from complying with its duties under articles IV and V of the compact." Furthermore, in the same 1998 Act which

amended section 1584, the General Assembly also promulgated an additional compact provision which states:

"[PennDOT] shall, for purposes of imposing a suspension or revocation under article IV of the compact, treat reports of convictions received from party states that relate to driving, operating or being in actual physical control of a vehicle while impaired by or under the influence of alcohol, intoxicating liquor, drugs, narcotics, controlled substances or other impairing or intoxicating substance as being substantially similar to section 3731 (relating to driving under the influence of alcohol or controlled substance). *The fact that the offense reported to [PennDOT] by a party state may require a different degree of impairment of a person's ability to operate, drive or control a vehicle than that required to support a conviction for a violation of section 3731 shall not be a basis for determining that the party state's offense is not substantially similar to section 3731 for purposes of article IV of the compact.*" 75 Pa.C.S. §1586. (emphasis added) However, section 1586 and the amendment to section 1584 were not in effect at the time of Walsh's conviction on September 30, 1998.

### (C) *"Substantially Similar" Analysis*

In considering the merits of a reciprocal license suspension under the compact, Pennsylvania courts originally employed an approach which compared Pennsylvania's DUI statute, 75 Pa.C.S. §3731(a), with the foreign state's DUI law to determine whether the provisions of the respective statutes were substantially similar. See *e.g., Collins v. PennDOT,* 735 A.2d 754, 756-58 (Pa. Commw. 1999) (suspension improper since Arizona DUI statute was not substantially similar to Pennsylva-

nia DUI statute). However, in *Petrovick, supra,* the Supreme Court of Pennsylvania concluded that such a comparative analysis was unwarranted since "the relevant inquiry is whether each state's drunk driving provisions are 'of a substantially similar nature' to article IV(a)(2) of the compact," rather than to each other. *Petrovick,* 741 A.2d at 1266. Specifically, in considering whether Pennsylvania license suspensions were justified based upon New York and Maryland convictions, the *Petrovick* court reasoned:

"Thus, the compact does not call for a direct comparison of Pennsylvania's statute to the out-of-state statute. Rather, the compact requires a two-pronged test. First, we must evaluate whether there is a Pennsylvania offense which is 'of a substantially similar nature' to the provisions of article IV(a)(2). Second, we must evaluate whether there is a Maryland or New York offense which is 'of a substantially similar nature' to article IV(a)(2). Both prongs must be satisfied before PennDOT can sanction a Pennsylvania citizen for an out-of-state conviction." *Id.* at 618-20, 741 A.2d at 1266-67. Accord, *Tindal v. PennDOT,* 756 A.2d 724 (Pa. Commw. 2000).

In *Petrovick,* the Supreme Court found that section 3731(a)(1) of Pennsylvania's DUI statute which proscribes operating a vehicle "[w]hile under the influence of alcohol to a degree which renders the person incapable of safe driving," 75 Pa.C.S. §3731(a)(1), is substantially similar to article IV(a)(2) which refers to "driving a motor vehicle while under the influence of intoxicating liquor . . . to a degree which renders the driver incapable of safely driving a motor vehicle." *Id.* at 620, 741 A.2d at 1267. As to the second tier of the two-step analysis, the court further determined that New

York's "driving while ability impaired" (DWAI) law is not substantially similar to subsection (a)(2) of article IV since it does not require intoxication to a degree which renders the motorist unfit to drive safely. Additionally, the *Petrovick* court likewise declined to uphold a reciprocal suspension for violating Maryland's DUI statute which bans driving under the influence of alcohol but does not reference "to a degree which renders the driver incapable of safe driving," and remarked:

"The Maryland statute fails to specify the degree to which a person must be under the influence of alcohol, and therefore permits a much lower threshold for culpability; in contrast, article IV(a)(2) requires that the person be impaired to a degree that he or she is incapable of safely driving." *Id.* at 627, 741 A2.d at 1271. As a consequence, the license suspensions predicated upon the New York and Maryland violations were reversed. *Id.*

### (D) *Utah Report of Conviction*

Walsh contends that PennDOT cannot satisfy its burden of establishing the requisite similarity under article IV of the compact since Utah permits a DUI conviction based upon a lower standard of intoxication and culpability. Cf. *Hunt v. PennDOT,* 750 A.2d 922, 924 (Pa. Commw. 2000) ("[s]ince West Virginia, like Pennsylvania, equates driving under the influence with a 0.10 percent blood alcohol content, the level of impairment required in West Virginia is substantially similar to the standards employed in Pennsylvania and under the compact."). Walsh's "substantial similarity" argument need not be addressed since his license suspension is subject to reversal due to the deficient content of the abstract report that PennDOT received from the state of Utah.

Article III of the compact obligated Utah to forward a conviction report to PennDOT which contained: "(1) the identity of the person convicted; (2) a description of the violation, including the section of the statute, code, or ordinance violated; (3) the identity of the court in which the person was convicted; and (4) an indication of the plea or of whether the conviction resulted from a forfeiture of security." *Mazurek v. PennDOT,* 717 A.2d 23, 25 (Pa. Commw. 1998). If the foreign conviction report "lacks such information, it is incompetent to support the department's suspension of a license." *Boots v. PennDOT,* 736 A.2d 64, 66 (Pa. Commw. 1999); *Mazurek, supra.* Therefore, if the abstract report merely indicates that a motorist was convicted under another state's DUI law without specifying the particular subsection of the statute that was violated, a license suspension based upon such a report must be vacated. *McCann v. PennDOT,* 728, A.2d 1009, 1011 (Pa. Commw. 1999) ("[i]t is necessary that the precise subsection of the violated statute be included in the report of conviction, not only to comport with *Mazurek* but also since this court must determine if [PennDOT] is giving proper effect 'to the conduct reported . . . as it would if such conduct had occurred in the home state,' in accordance with article IV of the compact.").

The Utah report simply states that Walsh pled guilty to violating "41-6-44 driving under the influence of" without any further citation or elaboration. At the time of Walsh's arrest and conviction, Utah Code Ann. §41-6-44(2)(a) (Supp. 1998) made it unlawful for a person to operate a vehicle when [s]he either (i) has a blood or breath alcohol concentration of .08 grams or greater as shown by a chemical test given within two hours after

the alleged operation, or (ii) is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle. The DUI provision in effect in September 1998 prohibited "driving or controlling a vehicle with a blood-alcohol level of .08 grams or more, not driving or controlling a vehicle when a test shows a level of .08 grams or more." *State v. Preece,* 971 P.2d 1, 7 (Utah 1998) (citing U.C.A. §41-6-44,(2)(a)(i)). Effective March 3, 1999, that subsection was amended to change the temporal nature of the alcohol level determination and currently reads "has sufficient alcohol in his body that a chemical test given within two hours of the alleged operation or physical control shows that the person has a blood or breath alcohol concentration of .08 grams or greater." U.C.A. §41-6-44(2)(a)(i) (Supp. 2000). The second subsection of Utah's DUI statute, §41-6-44(2)(a)(ii), contains language that is comparable to the requirements of Pennsylvania law, 75 Pa.C.S. §3731(a)(1), and article IV(a)(2) of the compact, 75 Pa.C.S. §1581, article IV. Regrettably, due to the inadequacy of the abstract report from Utah, it cannot be determined which subsection Walsh admittedly violated by pleading guilty on September 30, 1998.

Inasmuch as the Utah report does not identify the relevant subsection of the Utah DUI statute involved, it cannot serve as the basis for a license suspension and Walsh's appeal must, therefore, be sustained. *McCann, supra; Mazurek, supra.* Although the recent amendment to 75 Pa.C.S. §1584 now regards such an omission as inconsequential, that amendment cannot be applied retroactively to Walsh's offense and conviction which predate its enactment on December 21, 1998. See *Rouse v.*

*PennDOT,* 732 A.2d 35, 37 (Pa. Commw. 1999) (section 1584 amendment may only be applied prospectively); *Sweet v. PennDOT,* 724 A.2d 1004, 1005 (Pa. Commw. 1999) (amendment to 75 Pa.C.S. §1584 does not apply to DUI convictions which occurred prior to December 21, 1998). Moreover, while the current provisions of 75 Pa.C.S. §1586 could yield a different result in this case, see *Ester v. PennDOT,* 751 A.2d 1273 (Pa. Commw. 2000) (with the advent of section 1586, a license suspension was proper for a DUI conviction under a North Carolina statute requiring a blood alcohol content of 0.08 percent), that statute likewise cannot be applied to convictions which predate December 21, 1998. *Petrovick,* 559 Pa. at 624-25, 741 A.2d at 1269. Based upon the language of the Utah abstract report and the provisions of 75 Pa.C.S. §§1581-1585 in effect at the time of Walsh's conviction, PennDOT erred by suspending Walsh's driving privileges and his license suspension appeal will be sustained.

## ORDER

And now, August 1, 2000, upon consideration of the "Appeal from suspension of driver's license" filed by the petitioner, William J. Walsh, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The license suspension appeal filed by the petitioner, William J. Walsh, is sustained;

(2) The suspension by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing of the driving privileges of the petitioner, William J. Walsh, pursuant to 75 Pa.C.S. §§1581-1585 is reversed; and

(3) This matter is remanded to the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, to reinstate the driving privileges of the petitioner, William J. Walsh.