735 A.2d 681

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Shane Farron McCURDY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided Aug. 3, 1999.

66

Thomas R. Ceraso, for Shane Farron McCurdy.

Robert S. Bell, Indiana, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAM and SAYLOR, JJ.

### OPINION

SAYLOR, Justice.

We allowed appeal to consider whether Appellant's convictions for driving under the influence pursuant to Section 3731(a)(1) of the Vehicle Code and homicide by vehicle while driving under the influence are undermined by the constitutional infirmity of Section 3731(a)(5).

Shortly after midnight on May 20, 1995, Appellant, Shane McCurdy, was operating a 1978 Cadillac on Route 598 in Center Township, Indiana County. Harry Garcia and Theron Smith were passengers. As McCurdy was attempting to negotiate a curve in the road, he lost control of his vehicle, causing it to leave the roadway and collide with a tree. Smith died from the resulting trauma.

When Trooper Allen Evans of the Pennsylvania State Police arrived at the accident scene, he observed that McCurdy exhibited signs of intoxication; in particular, he had a strong odor of alcohol about him, was swaying, had difficulty walking, and appeared somewhat dazed. McCurdy admitted to Trooper Evans that he was the operator of the vehicle, but because of McCurdy's injuries, no field sobriety tests were administered. McCurdy was taken to the Indiana Hospital for treatment, and, at 1:55 a.m., hospital personnel withdrew blood in the course of treating his injuries. A test of McCurdy's blood disclosed a blood alcohol level of .233 percent.[1]

Later that morning, Trooper Evans arrived at the hospital to interview McCurdy. During the interview, McCurdy related to Trooper Evans that he had consumed four servings of beer prior to the accident and that he had lost control of the vehicle while attempting to negotiate a curve. As Trooper Evans was unaware that blood had been withdrawn from McCurdy, he asked him to submit to a blood test, which McCurdy refused.

The police reconstruction of the accident revealed that McCurdy was operating his vehicle at a speed of at least 60 miles an hour in a zone in which the speed limit was 55 miles per hour, and that he failed to negotiate the gradual turn in the roadway. An examination of McCurdy's vehicle eliminated any mechanical cause for the accident.

Based upon the foregoing, McCurdy was arrested and charged with: driving under the influence pursuant to 75

---

1. The blood test was performed on blood serum and produced a result of .271, which was mathematically adjusted to reflect a whole blood result of .233.

Pa.C.S. § 3731(a)(1), (4), and (5);[2] homicide by vehicle while driving under the influence, 75 Pa.C.S. § 3735; homicide by vehicle, 75 Pa.C.S. § 3732; and involuntary manslaughter, 18 Pa.C.S. § 2504, together with a number of summary offenses. McCurdy proceeded to a jury trial and was found guilty of all offenses, with the exception of two summary offenses. Although the jury rejected Section 3731(a)(4) as a basis for the driving under the influence conviction, it specifically accepted subsections (a)(1) and (a)(5) as supportive of the conviction. Thereafter, McCurdy was sentenced to a term of incarceration of three and one-half to seven years.

On appeal, the Superior Court treated McCurdy's conviction for driving under the influence as if it were, in fact, two convictions, one pursuant to Section 3731(a)(1) and the other pursuant to subsection (a)(5). Based upon the decision in *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996), in which this Court declared that subsection (a)(5) was void for vagueness and overbreadth, the Superior Court vacated what it termed to be the (a)(5) conviction. The Superior Court affirmed the judgment of sentence for McCurdy's other convictions.

McCurdy claims that because his conviction for driving under the influence under Section 3731(a)(5) was reversed, his

---

**2.** At the time of McCurdy's conviction, Section 3731 provided in pertinent part:

**§ 3731. Driving under the influence of alcohol or a controlled substance**

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;

\* \* \*

(4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater; or

(5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

(i) obtained within three hours after the person drove, operated or was in physical control of the vehicle; or

(ii) if the circumstances of the incident prevent collecting the sample within three hours, obtained at a reasonable additional time after the person drove, operated or was in actual physical control of the vehicle.

convictions for driving under the influence under Section 3731(a)(1) and homicide by vehicle while driving under the influence must also be reversed. Specifically, McCurdy asserts that the trial court improperly instructed the jury that evidence of his blood alcohol level could be considered in evaluating the Commonwealth's proof pursuant to Section 3731(a)(1), when such evidence was only admissible as proof under Section 3731(a)(5). McCurdy bases this argument, in part, upon the assumption that the Commonwealth's failure to offer evidence relating his blood alcohol level to the time of the accident precludes the use of such evidence in establishing the offense of driving under the influence pursuant to subsection (a)(1). Furthermore, McCurdy maintains that it is unclear whether he would have been convicted of homicide by vehicle while driving under the influence in the absence of the charge under Section 3731(a)(5).

With respect to the admission of McCurdy's blood alcohol level as evidence of the violation of Section 3731(a)(1), the trial court instructed the jury as follows:

> Now, there was evidence that a sample of the defendant's blood was taken and tested and showed that his blood alcohol level was .233 percent. Ask yourselves, is this evidence credible? Are the test results an accurate measure of the level of alcohol in the defendant's bloodstream? Bear in mind that it is the defendant's blood alcohol level at the time that he was driving, operating or in control that is directly relevant under the first two charges of driving under the influence.

> If there was a delay between the time the defendant was driving, operating or in control and the time when the sample was taken, then ask yourselves, did the defendant's blood alcohol level change in the interim? How much higher or lower was his blood alcohol level at the time he was driving, operating, or in control? Remember, you cannot find the defendant guilty of the blood alcohol charge unless you determine beyond a reasonable doubt that his blood alcohol level was 0.10 percent or greater and that

applies to the second and third counts that I just defined for you.

Also keep in mind, you may be able to find the defendant guilty of the incapable of safe driving charge . . . regardless of whether you can determine his blood alcohol level. The defendant's blood alcohol level is not an element of that charge. It is only a piece of evidence relevant to the question of whether he was under the influence to the point that he could not drive safely.

If you believe that the defendant drove, operated or was in control of the vehicle when his blood alcohol level was more than five one-hundredths of one percent or 0.05 percent, but less than ten one-hundredths of one percent or 0.1 percent, you cannot infer from that fact that the defendant either was or was not under the influence of alcohol to a degree which made him incapable of safe driving but do not ignore that fact. Consider the defendant's blood alcohol level along with all the other evidence relevant to his condition when you decide whether the defendant was under the influence to the point that he could not drive safely.

These instructions properly oriented the jury in evaluating the relevant proof of a violation of Section 3731(a)(1). This Court has explained that "[s]ubsection (a)(1) is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Loeper*, 541 Pa. 393, 402–03, 663 A.2d 669, 673–74 (1995). Thus, evidence of McCurdy's blood alcohol content was admissible under subsection (a)(1), along with other competent evidence, on the issue of whether McCurdy was under the influence of alcohol to a degree that rendered him incapable of safe driving. *See* 75 Pa.C.S. § 1547(c); *see also Commonwealth v. Gonzalez*, 519 Pa. 116, 126–27, 546 A.2d 26, 31 (1988)(plurality opinion).[3] Moreover, the fact that

3. While a chemical test result from an individual's blood or breath sample is not required to support a conviction pursuant to subsection (a)(1), should a test reveal a blood alcohol content of. 05 percent or less,

▮▮▮▮▮▮▮▮▮▮▮▮▮.

McCurdy's blood was not withdrawn until 1:55 a.m., when the accident occurred at approximately 12:20 a.m., affects the weight of such evidence, not its admissibility. *See generally Commonwealth v. Curran,* 700 A.2d 1333, 1336 (Pa.Super.1997); *Commonwealth v. Phillips,* 700 A.2d 1281, 1288 (Pa.Super.1997)(plurality opinion), *appeal denied,* 555 Pa. 718, 724 A.2d 934 (1998). Accordingly, the trial court did not err in instructing the jurors to consider, along with other evidence, McCurdy's blood alcohol level in deciding whether he was under the influence of alcohol to a degree that rendered him incapable of safe driving pursuant to Section 3731(a)(1).[4]

▮▮   McCurdy also maintains that because his conviction for homicide by vehicle while driving under the influence may have been predicated upon his driving under the influence conviction pursuant to Section 3731(a)(5), he is entitled to a new trial. McCurdy's argument, however, misapprehends the statutes at issue. The offense of homicide by vehicle while driving under the influence provides in relevant part:

> the operator may not be charged with the offense of driving under the influence under subsections (a)(1) or (a)(4). *See* 75 Pa.C.S. § 1547(d).

**4.** Although McCurdy was acquitted of violating Section 3731(a)(4), evidence of his blood alcohol level was also admissible, despite the delay in testing, as proof that he operated a vehicle under the influence of alcohol pursuant to this subsection, as well as pursuant to subsection (a)(1). *See Loeper,* 541 Pa. at 403–04 n. 7, 663 A.2d at 674 n. 7; *Yarger,* 538 Pa. at 334–35, 648 A.2d at 531.

The principle that blood alcohol evidence is generally admissible and may constitute a *prima facie* case in a prosecution under subsection (a)(4) was established in *Commonwealth v. Yarger,* 538 Pa. 329, 334–35, 648 A.2d 529, 531 (1994). *See also Loeper,* 541 Pa. at 403–04 n. 7, 663 A.2d at 674 n. 7. As the concurring opinion suggests, there is no logical basis for distinguishing between subsections (a)(4) and (a)(1) in this regard. While the concurrence finds an inconsistency in the Court's precedent based upon *Commonwealth v. Shade,* 545 Pa. 347, 681 A.2d 710 (1996), *Shade* merely represents the application of pre-*Yarger* principles, since the defendant in that case had been convicted and sentenced prior to *Yarger,* and *Yarger* is not to be retroactively applied. *See Loeper,* 541 Pa. at 403–04 n. 7, 663 A.2d at 674 n. 7. The substantive concerns expressed in the concurrence regarding *Yarger's* impact are also shared by the Superior Court. *See, e.g., Commonwealth v. Montini,* 712 A.2d 761, 766–67 (Pa.Super.1998). There is no basis in this case, however, for reexamining *Yarger* or diverging from its holding, since appeal was not sought or allowed for such purpose.

Any person who unintentionally causes the death of another person as the result of a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the second degree when the violation is the cause of death. . . .

75 Pa.C.S. § 3735. Thus, homicide by vehicle while driving under the influence requires: 1) a conviction for driving under the influence pursuant to Section 3731, and 2) proof that this violation caused the death. *See Commonwealth v. Lenhart,* 520 Pa. 189, 193, 553 A.2d 909, 911 (1989).

■ With regard to the first element, an offense under Section 3731 may be proven by evidence that an individual operated a vehicle under the influence of alcohol to a degree that rendered him incapable of safe driving (subsection (a)(1)), or, while the amount of alcohol by weight in his blood was .10 percent or greater (subsection (a)(4)). At the time of McCurdy's offense, Section 3731(a)(5) provided that the offense could also be established by evidence that the amount of alcohol by weight in his blood was .10 percent or greater based upon a chemical test obtained within three hours after the operation of a vehicle. In amending the driving under the influence statute by adding, initially, subsection (a)(4) and, later, subsection (a)(5), the General Assembly simply allowed the Commonwealth to establish an element of the offense of driving under the influence as a matter of law. *Cf. Loeper,* 541 Pa. at 403, 663 A.2d at 674 (stating that "an accused is under the influence of alcohol to a degree that renders him incapable of safe driving as a matter of law if his BAC is .10% or greater"). Understood in this manner, the driving under the influence statute proscribes a single harm to the Commonwealth—the operation of a vehicle under the influence to a degree that renders an individual incapable of safe driving. The fact that the offense may be established as a matter of law if the Commonwealth can produce the necessary chemical test does not constitute proof of a different offense, but merely represents an alternative basis for finding culpability.[5]

---

**5.** We note that the Superior Court has stated that the subsections of the driving under the influence statute are distinct offenses. *See Common-*

■ Here, the jury specifically found that the Commonwealth established the offense of driving under the influence pursuant to subsection (a)(1). Having established that offense, the unconstitutionality of an alternate method of proving the offense under subsection (a)(5) did not undermine the proof supportive of subsection (a)(1), particularly when, as noted, McCurdy's blood alcohol level was otherwise admissible under subsection (a)(1). Indeed, the Commonwealth's burden of proof pursuant to subsection (a)(1) is, if anything, more difficult than its burden under subsection (a)(5). *See generally Commonwealth v. Kemble*, 413 Pa.Super. 521, 527 n. 7, 605 A.2d 1240, 1242 n. 7 (noting that the *per se* provision of subsection (a)(4) eased the Commonwealth's burden of proof), *appeal denied*, 532 Pa. 651, 615 A.2d 340 (1992).

Thus, the import of subsection (a)(5) was merely to permit the jury to rest its finding of a driving under the influence violation upon blood alcohol evidence bearing a temporal connection to the offense. Here, however, the jury's verdict was not premised solely upon such a connection. Rather, it made an independent determination pursuant to subsection (a)(1), based upon competent evidence, that McCurdy was under the influence of alcohol to a degree that rendered him incapable of safe driving. This finding preserves the first element of the Section 3735. offense, namely, the conviction for driving under the influence, despite the removal of subsection (a)(5) as a separate basis for the conviction.[6]

*wealth v: Slingerland*, 358 Pa.Super. 531, 534, 518 A.2d 266, 268 (1986); *Commonwealth v. Fry*, 340 Pa.Super. 445, 447, 490 A.2d 862, 863 (1985). To the extent that these decisions are inconsistent with the holding in this case, we find them to be in error.

**6.** We note the significance of the trial court's charge to the jury in connection with our holding in this regard. Such charge was quite particularly divided according to the various theories of driving under the influence which the Commonwealth invoked against McCurdy. After separately detailing the elements of the (a)(1) and (a)(4) theories, the trial court gave a particularized explanation of the (a)(5) theory, specifically confining its description of the (a)(5) presumption to this context. The trial court thereafter emphasized the differences between the (a)(1), (a)(4), and (a)(5) proofs, for example, in an admonishment to the jurors to "[b]ear in mind that it is the defendant's blood alcohol level at the time that he was driving, operating or in control that is

■ Finally, the jury's finding of driving under the influence pursuant to Section 3731(a)(5) did not taint its essential finding that McCurdy's drunk driving caused the fatal accident for purposes of Section 3735. The element of causation can be established through eyewitness testimony, skid marks, or accident reconstruction testimony. *See Lenhart,* 520 Pa. at 193, 553 A.2d at 911. In this case, the Commonwealth presented evidence that McCurdy's intoxication rendered him incapable of safe driving by virtue of his speeding, his failure to control his vehicle on the highway, the resulting accident, his physical instability, and his admission of drinking. *See Commonwealth v. Griscavage,* 512 Pa. 540, 546–47, 517 A.2d 1256, 1259 (1986); *Commonwealth v. McGinnis,* 511 Pa. 520, 526–27 n. 4, 515 A.2d 847, 851 n. 4 (1986). Significantly, none of these proofs was connected with the (a)(5) inquiry, and such evidence provided the jury with a more than adequate basis for concluding that McCurdy's intoxication prevented him from controlling his vehicle, and impaired his reflexes and judgment, directly causing the fatal accident.

Accordingly, the order of the Superior Court is affirmed.

Justice ZAPPALA files a concurring opinion in which Justice NIGRO joins.

ZAPPALA, Justice, concurring.

Because of the majority's discussion regarding whether the Commonwealth needed to present testimony relating Appellant's BAC test result back to the time when he was actually driving I concur only in the result.[1] In this Court's most

directly relevant under the first two charges." The jury was thus provided with an appropriate framework within which to make its separate determinations concerning the (a)(1), (a)(4), and (a)(5) theories, which are reflected upon the completed special verdict form.

1. The reason that the issue of relation back testimony is important is because in many cases involving DUI charges the police have no direct evidence that a defendant had a particular blood alcohol content at the time of driving, and thus the Commonwealth must rely upon an inference to establish that the defendant did have a certain BAC level at the time he or she was driving. That inference is drawn from a BAC test that is administered after the defendant ceased driving. The problem that exists is that a variety of factors affect when alcohol is

recent decision involving relation back testimony we entered an arrest of judgment on a DUI conviction due to the Commonwealth's failure to present evidence relating BAC test results back to the time that the defendant had been driving. *See Commonwealth v. Shade*, 545 Pa. 347, 681 A.2d 710 (1996). Although *Shade* involved a charge based upon subsection (a)(4) alone, and this case involves (a)(1),[2] both sections pertain to a person's condition at the time he or she was driving. Therefore, the temporal concerns underpinning our decision in *Shade* are equally relevant in cases involving (a)(1) such as this one.[3,4]

Whether in an (a)(1) context or an (a)(4) context the probative value of any BAC test result comes from the expert who explains to the jury what the post-driving BAC test result means with respect to the defendant's condition at the time of driving. *See* footnote 1, *supra.* Otherwise, there is a dangerous possibility of a conviction based upon jurors' incomplete understanding of what insight a BAC test result provides into a defendant's condition at the time of driving. Such un-

absorbed into a particular individual's blood, which is when that person feels the effects of the alcohol. A plethora of considerations go into determining how probative a post-driving BAC test is of a person's condition while he or she had been driving. Those considerations include, *inter alia*, the persons height, weight, metabolism, what they had eaten and how long ago, when they consumed their last drink, and how many drinks they consumed within a particular time frame. *See* Robert J. Schefter, Under the Influence of Alcohol Three Hours After Driving: The Constitutionality of the (a)(5) Amendment to Pennsylvania's DUI Statute, 100 Dick.L.Rev. 441, 465–466 (1996). Without expert testimony explaining the probative value of a BAC test result under the circumstances of a particular case there is a dangerous possibility of an unfair conviction based upon the uninformed speculation of jurors.

2. Appellant was charged based upon subsection (a)(4), but was not convicted on that basis.

3. Inconsistencies in BAC testing such as those that were evident in *Shade*, 681 A.2d at 711, where a BAC test result of .157% was followed only one minute later with a result of .147%, also raise a concern for the potentially prejudicial effect of admitting such a result without supporting testimony interpreting it.

4. Superior Court noted that the BAC test in this case was not administered until approximately two and one-half hours after Appellant ceased driving.

informed speculation should not be the basis for a DUI conviction especially where that conviction underlies a crime as serious as the homicide while driving under the influence charge in the case at bar. This is particularly true in a case such as this one, where the defendant stipulates to having consumed alcohol and therefore the test result adds almost nothing of probative value unless an expert is willing and able to explain how such a result can be helpful to the jury in assessing the defendant's condition at the time of driving.

Nonetheless, because the focus in the case before us is whether the jury may have relied upon the unconstitutional subsection (a)(5), *see Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996), as the predicate offense to its homicide by vehicle while driving under the influence conviction, rather than squarely presenting the issue of whether the Commonwealth should have been required to present testimony explaining the probative value of the BAC test result as related to the time when Appellant was actually operating his vehicle, I concur in the result.[5]

Justice NIGRO joins this concurring opinion.

**5.** I also note my belief that our Court should address some of the apparent inconsistencies that exist in the law with respect to relation back testimony, as soon as the appropriate case presents itself. As discussed above, most recently, in *Shade*, 681 A.2d at 710, we held that it was error for the trial court to relieve the Commonwealth from having to present relation-back evidence, and therefore arrested the judgment against the defendant. Yet in *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529 (1994), this Court had held that once the Commonwealth has established that the defendant's blood alcohol content reflects an amount above 0.10% (without relation-back testimony) it has made a *prima facie* case under § 3731(a)(4). When read together, the two decisions create an odd result. *Yarger* allows the Commonwealth to get to the jury without presenting relation-back testimony, however, if a jury then convicts a defendant and there was no relation-back testimony offered by the Commonwealth, then, under *Shade*, the conviction may not stand. The problems resulting from these two decisions is perhaps best illustrated by a recent Superior Court decision where, based upon *Yarger*, it reversed a trial court's decision, based upon *Shade*, not to admit a BAC test result without relation back testimony. *See Commonwealth v. Allbeck*, 715 A.2d 1213 (Pa.Super.1998), *allocatur pending*, 748 M.D. Alloc. Dkt.1998. I would be inclined to agree with the trial court's rationale, which relied upon the reasoning in our more recent *Shade* decision.