**Michael KULP, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 11, 2002.

Decided March 28, 2002.

J. Michael Farrell, Philadelphia, for appellant.

Michelle A. Fioravanti and Timothy P. Wile, Asst. Counsel In-Charge, King of Prussia, for appellee.

Before FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

■ Michael Kulp (Licensee) appeals from an order of the Court of Common Pleas of Chester County (Trial Court) dismissing his appeal from a one-year suspension of his operating privilege imposed by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department) pursuant to the Driver's License Compact (Compact).[1] We affirm.

On December 18, 1999, Licensee was arrested in the State of New Jersey and charged with driving while intoxicated (DWI), in violation of N.J. Stat. § 39:4–50(a).[2] Forty-five minutes after his arrest, Licensee provided a sample for a chemical test that showed a blood alcohol concentration (BAC) of 0.11%. Licensee pled guilty under a civil reservation before a New Jersey court, and he was convicted of DWI on March 31, 2000. On August 21, 2000, the Department notified Licensee that as a result of his conviction in New Jersey, which the Department treated as equivalent to a violation of 75 Pa.C.S. § 3731(a)[3],

---

1. Our scope of review in driver's license suspension cases is limited to a determination of whether the trial court's findings are supported by competent evidence, whether the trial court committed an error of law, and whether the trial court abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Lello*, 132 Pa.Cmwlth. 11, 571 A.2d 562 (1990).

2. The New Jersey DWI statute is violated when an individual:

> operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in [his or her] blood or permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to

> operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in [his or her] blood.

N.J. Stat. § 39:4–50(a).

3. This provision is Pennsylvania's driving under the influence (DUI) statute. It provides in pertinent part:

> [a] person shall not drive, operate or be in actual physical control of the movement of any vehicle:
> (1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.
> (2) While under the influence of any controlled substance ... to a degree which renders the person incapable of safe driving.

Licensee's operating privileges would be suspended for a period of one year as of September 25, 2000.

Licensee filed an appeal with the Trial Court which conducted a *de novo* hearing on December 14, 2000. The Department admitted into evidence a packet of documents certified by the Secretary of Transportation and the Director of the Bureau of Driver Licensing. Licensee made legal argument but did not present additional evidence. The Trial Court denied Licensee's appeal by order of June 11, 2001.

On appeal to this Court, Licensee raises four arguments. First, he contends that the reported New Jersey DWI conviction is not substantially similar to Article IV(a)(2) of the Compact because of the way N.J. Stat. § 39:4–50(a) is applied. Second, he contends that the New Jersey report of Licensee's DWI conviction did not contain sufficient information as required by the Compact. Third, he challenges the Department's ability to rely upon a conviction where the guilty plea was entered under a "civil reservation." Finally, the Licensee challenges the certified report offered into evidence by the Department because it was not also certified by the State of New Jersey, the convicting state.

█ In his first argument, Licensee raises issues that have not been addressed in prior cases that have considered whether N.J. Stat. § 39:4–50(a) is substantially similar to Article IV(a)(2) of the Compact, 75 Pa.C.S. § 1581. Essentially, Licensee claims that before this Court can find that

his New Jersey DWI conviction is "substantially similar" to Article IV(a)(2) of the Compact, it must find that the New Jersey and Pennsylvania statutes are *applied* similarly. In support of this position, Licensee directs us to this Court's statement that "... the relevant inquiry is not only what the out-of-state DUI statute says, but how it is interpreted and applied." *Hunt v. Department of Transportation, Bureau of Driver Licensing*, 750 A.2d 922, 924 (Pa.Cmwlth.2000). Licensee believes that the differences in interpretation and application between the Pennsylvania DUI statute and the New Jersey DWI statute are so significant that they defeat the existing precedent that has specifically found that the New Jersey DWI statute is substantially similar to Article IV(a)(2) of the Compact. We disagree.

Licensee was convicted of a *per se* violation. Both New Jersey and Pennsylvania base their *per se* violations on the same standard, *i.e.*, a BAC of 0.10% or higher. Both statutes implicitly prohibit driving under the influence of alcohol or drugs "to a degree which renders the driver incapable of safely driving a motor vehicle ..." 75 Pa.C.S. § 1581. The two statutes differ, however, in the evidence that can be used to prove (or defeat) a *per se* violation.

█ There is always a gap in time between operation of the vehicle and the chemical test for BAC. The New Jersey Supreme Court has noted, rather sensibly, that it would be impossible to have a BAC test coincide in time with operation of a vehicle. *State of New Jersey v. Tischio*, 107 N.J. 504, 527 A.2d 388 (1987).[4] In

---

(3) While under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving.
(4) While the amount of alcohol by weight in the blood of:
 (i) an adult is 0.10% or greater; or
 (ii) a minor is 0.02% or greater.

75 Pa.C.S. § 3731(a).

4. The Court stated as follows:

Although the statute does not refer to the time of testing, it is obvious that a breathalyzer test cannot be administered while a defendant is driving his motor vehicle. Thus, the blood-alcohol level determined by

*Tischio,* the New Jersey Supreme Court held that so long as the 0.10% BAC is determined "within a reasonable time of defendant's operation" the *per se* violation is shown. *Id.* at 522, 527 A.2d at 397. Because the New Jersey Legislature intended a breathalyzer test to be relied upon whenever possible, the New Jersey Supreme Court interpreted N.J. Stat. § 39:4–50(a) not to allow the use of extrapolation testimony at trial to show the BAC at the moment in time defendant was actually operating the vehicle. A test conducted within a "reasonable period of time" after the defendant is stopped for drunk driving that yields a 0.10% BAC is the only evidence needed or allowed to show a *per se* violation. *Id.*

 By contrast, a defendant may present extrapolation evidence in a Pennsylvania *per se* DUI case. Under 75 Pa. C.S. § 3731(a)(4)(i) a "person shall not drive, operate or be in actual physical control of the movement of a vehicle … [w]hile the amount of alcohol by weight in the blood of an adult is 0.10% or greater…." It is *prima facie* evidence that this *per se* rule is violated if a chemical test of the person's breath, blood, urine yielding a BAC of 0.10% is done within three hours after the person was driving the vehicle.

75 Pa.C.S. § 3731(a.1)(2).[5] The defendant may present evidence to rebut the state's *prima facie* case of DUI, but the state is not required to respond to the defendant's evidence in order for the jury to convict. *Commonwealth v. Greth,* 758 A.2d 692 (Pa.Super.2000) (wherein the court held that it is the function of the jury to weigh defense evidence against the Commonwealth's *prima facie* evidence in reaching a verdict).

In *Tischio,* a justice dissented because he believed that N.J. Stat. § 39:4–50(a) did allow the introduction of extrapolation evidence. He would have followed the New Jersey Attorney General's proffered interpretation that "a breathalyzer test result obtained after an arrest should be viewed as indicating 'the presumptive equivalent of the amount of alcohol at the time the offense was committed.' " *Tischio* at 532, 527 A.2d at 403. The New Jersey Attorney General also asserted that the State's *prima facie* case could be defeated by persuasive extrapolation evidence where the defendant bears the evidentiary burden. In short, the dissent (and the New Jersey Attorney General) believed that N.J. Stat. § 39:4–50(a) allowed for an evidentiary procedure that is virtually identi-

a breathalyzer test can never automatically coincide with the time of the defendant's actual operation of his motor vehicle, as suggested by the literal language of the statute. This raises at least two possible interpretations of the statutory offense. One is that a 0.10% blood-alcohol level determined by a breathalyzer test made within a reasonable time of defendant's operation alone satisfies the statute. The other is that some evidentiary process—not discernible on the face of the of the statute—must be invoked to relate breathalyzer test results to the time when the defendant was actually driving. *Tischio,* 107 N.J. at 510, 527 A.2d at 391.

5. It states:

(a.1) Prima facie evidence.—

(1) It is prima facie evidence that:
(i) an adult had 0.10% or more by weight of alcohol in his or her blood at the time of driving, operating or being in actual physical control of the movement of any vehicle if the amount of alcohol by weight in the blood of the person is equal to or greater than 0.10% at the time a chemical test is performed on a sample of the person's breath, blood or urine.
* * *
(2) For the purposes of this section, the chemical test of the sample of the person's breath, blood or urine shall be from a sample obtained within three hours after the person drove, operated or was in actual physical control of the vehicle.
75 Pa.C.S. § 3731(a).

cal to that established by the Pennsylvania General Assembly in 75 Pa.C.S. § 3731(a.1). This belief, however, was rejected by the majority of the *Tischio* court.

In *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996) our Supreme Court held that an earlier version of Pennsylvania's DUI statute, 75 Pa.C.S. §§ 3731(a)(5), 3731(a.1) (repealed 1996), to be unconstitutional. Under the pre 1996 statutory scheme, a defendant could defend a *per se* charge only by presenting evidence that alcohol had been consumed *after* the defendant stopped driving and *before* the test was administered. 75 Pa. C.S. § 3731(a.1) (repealed 1996).[6] Our Supreme Court found the statute unconstitutionally vague and overbroad because it meant that drivers could be convicted even though their BAC at the time of driving was not at 0.10%, but at some unknown (presumably lower) level.

■ Licensee is correct in his argument that the Pennsylvania DUI statute and New Jersey DWI statute are applied differently.[7] Indeed, it may well be that under our Supreme Court's analysis, N.J. Stat. § 39:4–50(a) would be found unconstitutional. However, the Compact does not require a comparison of Pennsylvania and New Jersey's drunk driving statutes; the relevant inquiry is whether each state's law is "substantially similar" to Article IV(a)(2) of the Compact.[8] Article IV(a)(2) provides, in relevant part, as follows:

> (a) The licensing authority in the home state, for the purposes of suspension ... shall give the same effect to the conduct reported ... as it would if such conduct had occurred in the home state in the case of convictions for:
>
> . . .
>
> (2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug *to a degree which renders the driver incapable of safely driving a motor vehicle.*

75 Pa.C.S. § 1581 (emphasis added). The New Jersey statute meets this standard. Unsafe operation of a vehicle has been found to be implicit in N.J. Stat. § 39:4–50(a). It does not change the analysis to show, as Licensee does here, that it may be easier to show the requisite "degree" of intoxication in New Jersey than in Pennsylvania.

The Pennsylvania Supreme Court has specifically held that variations in the permitted BAC level from state to state are contemplated by the Compact. *Hoenisch v. Department of Transportation, Bureau*

---

**6.** This repealed provision stated:

> (a.1) Defense.—It shall be a defense to a prosecution under subsection (a)(5) if the person proves by a preponderance of evidence that the person consumed alcohol after the last instance in which he drove, operated or was in actual physical of the vehicle and that the amount of alcohol by weight in his blood would not have exceeded 0.10% at the time of the test but for such consumption.

75 Pa.C.S. § 3731(a.1) (repealed 1996). Subsection (a)(5), 75 Pa.C.S. § 3731(a)(5)(repealed 1996), provided that the test had to be conducted within three hours of the operation of the vehicle.

**7.** It is not clear that case law need always be considered when undertaking the "substantially similar" statute analysis required by the Compact. In *Jacobs v. Commonwealth, Department of Transportation,* 783 A.2d 370, 374 (Pa.Cmwlth.2001), the Court noted that it was appropriate to look to New Jersey's case law because N.J. Stat. § 39:4–50(a) is not identical to the language of the Compact. Accordingly, we consider New Jersey's case law here.

**8.** *Petrovick v. Commonwealth, Department of Transportation,* 559 Pa. 614, 741 A.2d 1264, 1266 (1999).

*of Driver Licensing*, 567 Pa. 89, 785 A.2d 969 (2001). It has reasoned as follows:

> While Hoenisch's conviction was established pursuant to a *per se* method that accords evidentiary effect to a lower blood alcohol content threshold than that allowed by Pennsylvania's *per se* method, the Compact anticipates such variance by recognizing a general driving under the influence offense and permitting effect to be given to laws of a substantially similar nature. Furthermore, such construction serves an underlying policy of the Compact, specifically, consideration of the overall compliance with motor vehicle laws as a condition to the maintenance of a license in a party state.

*Id.* at 96–97, 785 A.2d at 974 (citations omitted). In *Hoenisch*, the Licensee challenged his license suspension because the North Carolina statute under which he was convicted based its *per se* violation on a BAC of 0.08%. The Supreme Court concluded that this variation was contemplated by the Compact; therefore, the North Carolina statute was found to be substantially similar to Article IV(a)(2) of the Compact. If a twenty percent difference between the Pennsylvania and North Carolina *per se* violation does not defeat a finding of "substantial similarity," then the difference in application of the New Jersey DWI statute and the Pennsylvania DUI statute does not overcome the precedent of this Court holding that N.J. Stat. § 39:4–50(a) is substantially similar to Article IV(a)(2) of the Compact.[9] We reject Licensee's argument to the contrary.[10]

■ Next, Licensee claims that his license suspension must be reversed because the report relied upon by the Department was insufficiently detailed because it did not specify which part of N.J. Stat. § 39:4–50(a) was violated. This very contention has been previously presented to this Court and rejected. *Scott v. Department of Transportation, Bureau of Driver Licensing*, 730 A.2d 539 (Pa.Cmwlth.1999), *aff'd* 567 Pa. 631, 790 A.2d 291 (2002). As noted in *Scott*, the New Jersey DWI statute prohibits conduct that is not unlawful in Pennsylvania. Specifically, it is a violation of N.J. Stat. § 39:4–50(a) to *permit* another person to operate a vehicle under the influence of drugs or alcohol. N.J. Stat. § 39:4–50(a) lists four discrete ways one may be convicted of DWI, but it does not identify them by separate subsections. Accordingly, a report that simply recited the New Jersey statutory citation would not inform the Department (or the Licensee) which of the four proscriptions had been violated. However, the New Jersey report of Licensee's conviction issued to the Department, as in *Scott*, also contained the description "operate under influence of liq/drugs." This description together with the New Jersey statutory citation, as found by this Court in *Scott*, satis-

---

**9.** *See, e.g., Breen v. Department of Transportation, Bureau of Driver Licensing*, 771 A.2d 879 (Pa.Cmwlth.2001); *Kiebort v. Department of Transportation, Bureau of Driver Licensing*, 778 A.2d 773 (Pa.Cmwlth.2001); *Trevlyn v. Department of Transportation, Bureau of Driver Licensing*, 786 A.2d 1040 (Pa.Cmwlth. 2001).

**10.** We are mindful of the dissent but, respectfully, disagree. To subject each participating state's DUI statute to the constitutional analysis that would be applied by our appellate courts to Pennsylvania's statute would make the Compact unnecessarily burdensome. Further, there could be no end to litigation. Each new interpretation of another state's DUI statute by its appellate court would potentially undermine our precedent holding the other state's DUI statute substantially similar to the Compact.

fies the reporting requirements of the Compact.[11]

■ Licensee next argues that because he entered his guilty plea in New Jersey under a "civil reservation," it may not be used by the Department to suspend his operating privileges. Precedent is unequivocal that the use of a "civil reservation" is not an affirmative defense to a suspension imposed under 75 Pa.C.S. §§ 1532(b)(3) and 1581. *Bourdeev v. Department of Transportation, Bureau of Driver Licensing*, 755 A.2d 59 (Pa.Cmwlth. 2000), *aff'd* 566 Pa. 591, 782 A.2d 539 (2001). The conviction triggers the suspension by the Department; the manner by which the conviction was obtained, whether by plea or by jury trial, is irrelevant. Licensee's conviction supported the Department's suspension notwithstanding the fact that this conviction resulted from a guilty plea entered under a civil reservation.

■ Finally, Licensee claims that the Department improperly relied upon an electronic report of his New Jersey DWI conviction as opposed to one certified by the State of New Jersey. This issue was squarely addressed by this Court in *Bergen v. Department of Transportation, Bureau of Driver Licensing*, 785 A.2d 157 (Pa.Cmwlth.2001). Briefly, this Court held that 75 Pa.C.S. § 1532(b)(3) does not require certified reports in Compact cases, because 75 Pa.C.S. § 1550(d)(1) specifically authorized the Department to use electronically transmitted reports and mandates their admissibility in statutory appeal hearings. So long as the New Jersey report is certified by the Secretary of Transportation and the Director of the Bureau of Driver Licensing, the report may be admitted into evidence. *Koterba v. Department of Transportation, Bureau of Driver Licensing*, 736 A.2d 761 (Pa. Cmwlth.1999), *appeal denied*, 561 Pa. 703, 751 A.2d 195 (2000), *cert. denied*, 531 U.S. 816, 121 S.Ct. 53, 148 L.Ed.2d 21 (2000). The New Jersey electronic report of Licensee's DWI conviction was properly certified and admitted into evidence at Licensee's suspension hearing.

Because we do not sustain any of the challenges raised by Licensee in his appeal, the order of the Trial Court is affirmed.

## ORDER

AND NOW, this 28th day of March, 2002, the order of the Court of Common Pleas of Chester County, dated June 11, 2001, is affirmed.

CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully concur in part and dissent in part. I agree with the majority that: (1) Michael Kulp's (Licensee) guilty plea with a civil reservation in New Jersey does not prevent the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) from suspending Licensee's driver's license in Pennsylvania; (2) the trial court did not err in considering the electronic report

---

**11.** In any case, the Pennsylvania Supreme Court has held that the technical reporting requirements in the Compact apply to Pennsylvania when making its reports for delivery to other states, as opposed to acting upon the reports of other states. *Department of Transportation v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1164–65 (2000). Here, Licensee does not claim that he lacked notice of the actual conviction or of the nature of the Pennsylvania suspension proceeding. In *Crooks v. Department of Transportation, Bureau of Driver Licensing*, 564 Pa. 436, 442, 768 A.2d 1106, 1109 (2001), the Supreme Court noted that due process "does not create a right to be deliberately obtuse as to the nature of a proceeding."

transmitted by New Jersey to DOT; and (3) New Jersey's electronic report contains sufficient information about the conduct underlying Licensee's conviction to justify a license suspension in Pennsylvania.

However, for the reasons that follow, I do not agree that the conduct proscribed by New Jersey's driving while intoxicated (DWI) statute, N.J. Stat. § 39:4–50(a), is substantially similar to the conduct proscribed in Article IV(a)(2) of the Compact.

Article IV(a)(2) of the Compact proscribes *driving* a motor vehicle while impaired by alcohol to a degree that renders the driver incapable of safe driving. *See* 75 Pa.C.S. § 1581. New Jersey's DWI statute prohibits the *operation* of a motor vehicle "with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood. ...."[1] N.J. Stat. § 39:4–50(a). On its face, then, New Jersey's DWI statute appears to be substantially similar to Article IV(a)(2) of the Compact. However, in determining substantial similarity, the relevant inquiry is not only what the out-of-state statute says, but also how it is interpreted and applied. *Hunt v. Department of Transportation, Bureau of Driver Licensing,* 750 A.2d 922, 924 (Pa.Cmwlth.), *appeal denied,* 564 Pa. 718, 764 A.2d 1073 (2000).

The Supreme Court of New Jersey has held that N.J. Stat. § 39:4–50(a) applies to all licensees who drive after drinking enough alcohol to *ultimately* result in a blood alcohol content (BAC) of 0.10%. *State v. Tischio,* 107 N.J. 504, 527 A.2d 388 (1987), *appeal dismissed,* 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). Licensees can be prosecuted under N.J. Stat. § 39:4–50(a) even when their BAC was below 0.10% *at the time of driving. Id.* In fact, under New Jersey law, licensees are not permitted to introduce extrapolation evidence at trial to establish a lower BAC at the time of driving. *Id.* In New Jersey, it is a per se violation of N.J. Stat. § 39:4–50(a) if the licensee's BAC is 0.10% *at the time of chemical testing.*[2] *Id.*

The science of toxicology teaches us that alcohol does not have intoxicating effects until it is absorbed into the bloodstream. *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384 (2000). Once an individual consumes alcohol, the body does not absorb it immediately. *Id.* Absorption occurs somewhere between thirty to ninety minutes later. *Id.* Then, the individual's blood alcohol level gradually rises until a peak is reached roughly sixty to ninety minutes later; thereafter, the individual's blood alcohol level slowly declines.[3] *See*

1. New Jersey has accepted the view that virtually everyone experiences reduced driving ability at and above 0.10% blood-alcohol concentration. *State v. Tischio,* 107 N.J. 504, 527 A.2d 388 (1987), *appeal dismissed,* 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988).

2. I note that chemical testing must occur within "a reasonable time" of a traffic stop. *Tischio,* 107 N.J. at 519, 527 A.2d at 395–96. However, it is not clear what constitutes "a reasonable time" under New Jersey law. In 1983, the New Jersey legislature considered an amendment to N.J. Stat. 39:4–50(a) requiring chemical testing within four hours of a traffic stop; however, the legislature rejected the imposition of a particular time period for

the administration of chemical testing. *Tischio.*

3. The majority correctly states that there is always a gap between the operation of a motor vehicle and a chemical test for BAC, i.e., it is impossible to have a BAC test coincide with the operation of a vehicle. (Majority op. at 474.) However, an expert can determine inferentially from the results of a chemical test a person's BAC at the time of driving; the process is referred to as relation-back or retrograde extrapolation. *Commonwealth v. Zugay,* 745 A.2d 639 (Pa.Super.), *appeal denied,* —— Pa. ——, 795 A.2d 976 (2000) (citing Robert J. Schefter, *Under the Influence of Alcohol Three Hours After Driving: The Con-*

*Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992), superseded by statute as stated in *Commonwealth v. Loeper,* 541 Pa. 393, 663 A.2d 669 (1995).

The implication of the science of toxicology here is that a licensee may be convicted under N.J. Stat. § 39:4–50(a) for driving while *not* impaired by alcohol at all.[4] In other words, N.J. Stat. § 39:4–50(a), as interpreted and applied in New Jersey, may criminalize conduct that is not proscribed by Article IV(a)(2) of the Compact.[5] On that basis, I conclude that the conduct proscribed by N.J. Stat. § 39:4–50(a), as applied to Licensee here, is *not* substantially similar to the conduct proscribed by Article IV(a)(2) of the Compact.

Accordingly, I would reverse.

*stitutionality of the (a)(5) Amendment to Pennsylvania's DUI Statute,* 100 Dick. L.Rev. 441 (Winter 1996)). This process involves consideration of various factors, including the licensee's metabolic rate and weight, the time and specifics of the most recent food eaten, the licensee's tolerance to alcohol, the rate of alcohol absorption and evaporation, the lapse of time between the testing and the operation of the vehicle and the lapse of time between the last drink and the operation of the vehicle. *Id.*

4. Suppose a Pennsylvania licensee consumes enough alcohol on a trip to New Jersey to ultimately result in a BAC of 0.10%. The licensee leaves the bar or restaurant to return to his or her hotel, a short five-minute drive. Unfamiliar with the area, the licensee commits a minor traffic violation and is stopped by a police officer. The licensee is not intoxicated because the licensee's blood has not yet begun to absorb the alcohol; however, the officer detects an odor of alcoholic beverages. Sixty minutes later, during chemical testing, the licensee reaches the peak BAC of 0.10%. Based solely on the chemical test results, New Jersey courts will convict the licensee of *operating* a vehicle with a BAC of 0.10% even though, while driving, the licensee was not impaired.

5. Here, the New Jersey court denied Licensee the opportunity to present extrapolation evidence to prove that his BAC was below 0.10% at the time he actually was *driving* his motor vehicle. Thus, Licensee argues that N.J. Stat. 39:4–50(a), as applied in his case, cannot be substantially similar to Article IV(a)(2).