J-A01038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERTO R. LAUREANO | : | No. 1986 EDA 2017 |

Appeal from the Order June 9, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000087-2012

BEFORE:   LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                          **FILED MAY 14, 2018**

The Commonwealth appeals from the order entered in the Bucks County

Court of Common Pleas granting appellee, Roberto R. Laureano's, post-

sentence motion requesting a judgment of acquittal based on the court's

legally erroneous ruling permitting the Commonwealth to amend the

information.  The Commonwealth contends the amendment to the criminal

information was proper.  Based on the following, we reverse and remand for

further proceedings.

The trial court set forth the facts and arduous procedural history as

follows:

> The instant case arises from a motor vehicle accident on
> October 20, 2011.  The accident occurred in the area of 2220
> Street Road, Bensalem, PA.  The roadway is a four-lane highway

_____

* Retired Senior Judge assigned to the Superior Court.

with a center turning lane, and the accident occurred in the middle of the block with no traffic light or pedestrian crossing. When police arrived on scene, it was apparent that a pedestrian in a motorized wheelchair had been struck by a vehicle and was seriously injured. [Laureano] identified himself to police as the person driving the vehicle that had struck the pedestrian. The pedestrian later died.

Officer Jennifer Stahl ("Officer Stahl") of the Bensalem Township Police Department was the first officer to arrive at the scene and explained to [Laureano] that the police would like him to take a blood test due to the severity of the accident. [Laureano] was told that this was standard procedure, and Officer Stahl asked [Laureano] if he would consent to a blood draw. Officer Stahl made it clear that there was nothing that caused her to suspect that [Laureano] had done anything wrong or was in any way impaired. [Laureano] was not provided the standard consent form, nor was [Laureano] informed that the results of any test could be used against him in a criminal proceeding. [Laureano] consented to the blood test, and he was placed in a police car – without handcuffs – and taken to the local hospital for a blood draw.

The blood test came back positive for a metabolite of marijuana. [Laureano] was charged with 75 § 3802(d)(1)(i), Driving Under the Influence: Controlled Substance – Schedule 1, on February 2, 2012. [Laureano] filed an Omnibus Pretrial Motion to, in part, suppress the blood test results. A suppression hearing was held on May 12, 2012, and after we denied the motion to suppress, a waiver trial was held immediately thereafter.

During the waiver trial, all evidence and testimony from the suppression hearing was made part of the trial record. The Commonwealth also entered the blood results as evidence, but it offered no additional testimony. The defense demurred on the evidence. During arguments, the defense pointed out that the Commonwealth had charged [Laureano] with the incorrect statute. Specifically, the Commonwealth charged [Laureano] with [Section] 3802(d)(1)(i), which requires the active ingredient of the controlled substance to be in [Laureano]'s blood. In reality, [Section] 3802(d)(1)(iii) would have been the appropriate charge, as this section requires only that a metabolite of the controlled substance be present in [Laureano]'s blood. The Commonwealth requested that we allow them to reopen their case and allow an

amendment to the information to correct the charge, which we did. We then found [Laureano] guilty and deferred sentencing.

[Laureano] then filed a Post-Trial Motion for Extraordinary Relief requesting reconsideration of the motion to suppress the blood test results and the ruling to allow the amendment to the criminal information. We held a hearing on this Motion, which occurred on August 27, 2012. At this hearing, the defense argued three issues: (1) the police did not have probable cause to request a chemical test pursuant to the implied consent law; (2) [Laureano]'s consent was not knowing and voluntary because the police did not explain that the blood test results could be used against him in criminal charges; and (3) the Commonwealth should not have been permitted to amend the criminal information after both parties had rested.

We found that [Laureano]'s arguments on the voluntary nature of [his] consent had merit, and we reversed our original decision of May 15, 2012, thereby granting the motion to suppress. Because the Commonwealth could not meet its burden of proof without the suppressed evidence, we additionally vacated the conviction - also from May 15, 2012 - by an Order dated August 30, 2012. We did not reach the implied consent or amended criminal information issues at that time.

The Commonwealth appealed our decision to suppress the blood test, which led to the Superior Court and the Pennsylvania Supreme Court considering this case. The Superior Court initially upheld our decision but the Commonwealth's Petition for Allowance of Appeal was granted by the Pennsylvania Supreme Court. Following the Pennsylvania Supreme Court's decision in **Commonwealth v. Smith**, 77 A.3d 562 (Pa. 2013), the Pennsylvania Supreme Court remanded the case to the Superior Court, which overturned our suppression of the blood test. The case was then remanded to us for sentencing.

Sentencing was scheduled for November 19, 2014. [Laureano] again offered an oral Motion for Extraordinary Relief, arguing that we were incorrect in allowing the Commonwealth to amend its criminal information following the close of testimony at the trial. We considered argument from both sides on this point and consulted case law, after which we determined that it had been incorrect to allow the Commonwealth to amend its information following the close of testimony. We therefore

- 3 -

reversed our original decision in this matter and, since the Commonwealth was unable to meet its burden of proof under [Section] 3802(d)(1)(i), found [Laureano] not guilty. The Commonwealth then filed an appeal on December 18, 2014, and timely filed their Statement of Matters Complained of on Appeal on January 7, 2015.

Thereafter, we filed our Opinion on January 30, 2015. On November 17, 2016, the Superior Court decided that we improperly granted [Laureano]'s Motion for Extraordinary Relief instead of waiting for a post -sentence motion, and thus, our Order of November 19, 2014 was reversed, and the case was remanded for sentencing.

On remand, a sentencing hearing was held on March 24, 2017. At the conclusion of that hearing we sentenced [Laureano] to imprisonment in the Bucks County Correctional Facility for not less than 90 days nor more than 6 months. [He] was also ordered to pay the costs of prosecution, as well as a fine of $1,500.00. [Laureano] was released on his own recognizance pending appeal or post -sentence motion.

On March 31, 2017, [Laureano] filed a post -sentence motion, asking us to arrest judgment or order a judgment of acquittal. A hearing was held on June 6, 2017, regarding [his] post -sentence motion. After the hearing, on June 9, 2017, we granted [Laureano's] motion requesting a judgment of acquittal based on our legally erroneous trial ruling permitting the Commonwealth to amend the information.

Trial Court Opinion, 7/17/2017, at 1-4 (record citations omitted).[1] The

Commonwealth filed this appeal.[2]

_____

[1] The court's opinion was timestamped the following day.

[2] On June 23, 2017, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth filed a concise statement on July 10, 2017. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 17, 2017.

- 4 -

In its sole issue on appeal, the Commonwealth argues the trial court erred in granting Laureano's post-sentence motion for judgment of acquittal and determining that its earlier ruling, permitting the Commonwealth to amend the criminal information, was legally erroneous under Pennsylvania Rule of Criminal Procedure 564, which governs the amendment of criminal informations. *See* Commonwealth's Brief at 13. The Commonwealth states the court also "appears to misapprehend the nature of the amended crime charged and the alleged prejudice [Laureano] suffered as a result of the amendment." *Id.* at 15.

Our review of a ruling granting a motion for judgment of acquittal is guided by the following:

> "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." As we have stated:

> > The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must

be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

"It is well recognized, however, that a criminal conviction cannot be based upon mere speculation and conjecture."

*Commonwealth v. Graham*, 81 A.3d 137, 142 (Pa. Super. 2013) (citations omitted), *appeal denied*, 93 A.3d 462 (Pa. 2014).

At issue in the present case is Rule 564, which provides:

The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. *Commonwealth v. Duda*, 2003 PA Super 315, 831 A.2d 728, 732 (Pa. Super. 2003). The test to be applied is:

Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

- 6 -

> ***Commonwealth v. Davalos***, 2001 PA Super 197, 779 A.2d
> 1190, 1194 (Pa. Super. 2001)(citation omitted).

***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006).

"'[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules.'" ***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202 (Pa. Super. 2011), *quoting* ***Commonwealth v. Grekis***, 601 A.2d 1284, 1288 (Pa. Super. 1992).[3]

Here, Laureano was charged with the crime of driving under the influence of a controlled substance ("DUI"). A DUI offense is defined, in relevant part, as follows:

> **(d) *Controlled substances.* —** An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> **(1)** There is in the individual's blood any amount of a:

---

[3] We must consider several factors in determining whether an amendment has prejudiced a defendant:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Sinclair***, 897 A.2d at 1223 (citation omitted).

> **(i)** Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act;
>
> …
>
> **(iii)** metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S. § 3802(d).

As indicated above, Laureano was originally charged with Subsection 3802(d)(1)(i). Following closing arguments, the Commonwealth was permitted to amend its criminal information and charge Laureano with Subsection 3802(d)(1)(iii), as it was the more appropriate charge based on the facts of the case. Laureano was convicted under the latter offense, and subsequently sentenced. He then requested, and was granted, extraordinary relief regarding the ruling that granted the amendment. The Commonwealth now contends:

> Here, there can be little doubt that the original charge [(Subsection 3802(d)(1)(i))] and the amended charge [(Subsection 3802(d)(1)(iii))] involved the same basic elements and evolved from the same factual situation. The Commonwealth always alleged that [Laureano] unlawfully operated his vehicle while having marijuana in his blood. The basic elements of that offense did not change regardless of whether he had marijuana constituent or marijuana metabolite in his blood. Nor did the requested amendment arise from a new or different factual scenario. In addition, not only did the information place [Laureano] on notice of the criminal conduct alleged, but [Laureano]'s counsel conceded that he had actual notice that there was marijuana metabolite, rather than marijuana constituent, in [Laureano]'s blood once he received the lab report several weeks prior to trial. As such, the trial court had properly concluded during trial that it was appropriate to permit the Commonwealth to amend the information.

Commonwealth's Brief at 16-17 (citations omitted). Relying on

***Commonwealth v. Houck***, 102 A.3d 443 (Pa. Super. 2014), the

Commonwealth further asserts:

> The trial court states in its Opinion that the latter is not a lesser included [offense] of the former, insofar as "a metabolite of a controlled substance is separate and distinct from the controlled substance itself." Opinion, July 17, 2017, p. 7. Yet, just as the defendant in ***Houck*** could not have committed a Section 3802(c) offense without committing a Section 3802(b) offense, ***see Houck***, 102 A.3d at 453, here [Laureano] could not have had committed a [Subs]ection 3802(d)(1)(i) offense without committing a [Subs]ection 3802(d)(1)(iii) offense. Put another way, [Laureano] could not have had marijuana metabolite in his blood if he had not also previously had marijuana constituent in his blood. As that is the very conduct prohibited by [Subs]ection 3802(d)(1), the mere fact that, at the time of his blood draw, the marijuana constituent had broken down into a metabolite is legally insignificant. ***Cf. Commonwealth v. Sims***, 919 A.2d 931, 938 (Pa. 2007) (to be a cognate crime, and therefore a lesser included crime, it is sufficient that the two offenses have certain elements in common, such that the greater offense includes allegations of all the elements of the lesser offense); ***Commonwealth v. Sinclair***, 897 A.2d [1218,] 1222 [(Pa. Super. 2006)] ("The driving under the influence statute proscribes a single harm to the Commonwealth.... The fact that the offense may be established as a matter of law if the Commonwealth can produce the necessary chemical test [as opposed to the "incapable of safe driving" element] does not constitute proof of a different offense, but merely represents an alternative basis for finding culpability.") (quoting ***Commonwealth v. McCurdy***, 558 Pa. 65, 735 A.2d 681 (Pa. 1999)).

Commonwealth's Brief at 18-20 (footnote omitted). Additionally, the

Commonwealth states Laureano did not suffer any prejudice where: (1) "the

amended charge arose from the exact factual scenario as the original

charge;"[4] (2) "[t]he amendment did not add any new facts that were previously unknown to [Laureano] as he was both aware that the charge against him stemmed from marijuana in his blood while operating a vehicle and in that he conceded that he was aware of the results of his BAC weeks prior to trial;"[5] and (3) Laureano "put on no evidence and proffered no defense other than to rely on the variance between the results of the lab report and the subsection charged."[6]  Moreover, the Commonwealth alleges the "trial court appears to ignore that it is illegal under [Subs]ection 3802(d)(1) to operate a vehicle while having in one's blood any amount of either a controlled substance or a metabolite of a controlled substance, irrespective of whether the controlled substance or metabolite thereof affected one's ability to drive." *Id.* at 24.

In its Rule 1925(a) opinion, the trial court explained it granted Laureano relief for several reasons.  First, relying on ***Commonwealth v. Plybon***, 421 A.2d 224 (Pa. Super. 1980), the court stated, "[I]t had been incorrect to allow the Commonwealth to amend its information during closing arguments of the waiver trial."  Trial Court Opinion, 7/17/2017, at 4.  Specifically, the court found:

---

[4] Commonwealth's Brief at 20.

[5] *Id.* at 21

[6] *Id.*

In the present case, the Commonwealth only moved to amend the information following the close of its case and following the defense's demurrer on the evidence. It was not until the defense pointed out during its closing arguments that the Commonwealth had charged [Laureano] with the wrong statute that the Commonwealth requested allowance to amend the criminal information.

Additionally, [Laureano] … was on notice that he would have to defend himself under the charge of driving under the influence of a controlled substance, but the defenses for the charge of having an active ingredient of marijuana in the bloodstream varies distinctly from the defenses for the charge of having a metabolite or inactive ingredient of marijuana in the bloodstream. Our understanding is that a metabolite of marijuana can stay in the bloodstream for a much longer period of time than the active ingredients. Because of this, and because the defense had access to the Commonwealth's blood test results well before the trial, the defense prepared to argue[] that [Laureano] was not actually under the influence of marijuana at the time he operated the motor vehicle; that is, that the presence of the metabolite did not affect his ability to operate the vehicle. Additionally, the defense offered some alternative defenses as well, including, for example, a chain of custody argument.

*Id.* at 6.

Second, the court stated it did not "believe that 75 Pa.C.S.A. [§] 3802(d)(1)(iii) [wa]s a lesser-included offense of 75 Pa.C.S.A. [§] 3802(d)(1)(i)." Trial Court Opinion, 7/17/2017, at 6. Moreover, the court opined:

Just as subsection (ii) of this statute could not be a lesser-included offense of subsection (i), as a schedule II or III substance is a wholly different drug than a schedule I substance, we do[] not believe that subsection (iii) is a lesser-included offense of subsection (i), as a metabolite of a controlled substance is separate and distinct from the controlled substance itself. Accordingly, that, coupled with the timing of the amendment, should be sufficient to uphold our determination that the amendment to the criminal information was improper in this case.

- 11 -

***Id.*** at 7.   Additionally, the court determined "the potential for prejudice is especially heightened ... because the Commonwealth did not request leave to amend the information until after the close of the Commonwealth's case and after the demurrer of the defense." ***Id.***

We are constrained to disagree with the court's determination.   First, we conclude that despite the last minute notice of the amendment, the crime specified in the original information (Subsection 3802(d)(1)(i)) involved the same basic elements and evolved out of the same factual situation as the crime specified in the amended information (Subsection 3802(d)(1)(iii)). ***See Davolos, supra***.   In doing so, we disagree with the court's conclusion that Subsection 3802(d)(1)(iii) is not a lesser-included offense of Subsection 3802(d)(1)(i).   It is obvious that one cannot have a metabolite of marijuana in one's system if he has not already ingested the active ingredient, marijuana. "A 'metabolite' is the substance produced by metabolism or by a metabolic process." ***Vereen v. Commonwealth of Pennsylvania Bd. of Prob. & Parole***, 515 A.2d 637, 639 n.4 (Pa. Cmwlth. 1986), *citing* Dortland's Illustrated Medical Dictionary 803 (26th Ed.1981).   Additionally, both subsections do not require proof that a specific amount of the drug be in the defendant's system, they only require the presence of the drug or metabolite. As such, it is logical to assume that a crime requiring proof of the by-product of a controlled substance would fall under a crime requiring evidence of that

controlled substance. Accordingly, these crimes are not so "separate and distinct" as the trial court implies. *See* Trial Court Opinion, 7/17/2017, at 7.[7]

Second, we do not find that the defenses for these two subsections were substantially different because driving under the influence of a controlled substance pursuant to Section 3802(d)(1) does not require proof that the controlled substance impaired or affected Laureano's ability to operate the vehicle, contrary to the trial court's conclusion.[8] Rather, Section 3802(d)(1) only requires presence of the controlled substance in the defendant's blood. *See Commonwealth v. Etchison*, 916 A.2d 1169, 1174 (Pa. Super. 2007), *aff'd*, 943 A.2d 262 (Pa. 2008) ("[A] conviction under Section 3802(d)(1) does

---

[7] As such, we find the court's reliance on **Plybon**, **supra**, is misplaced. In **Plybon**, a panel of this Court affirmed the trial court's denial of the Commonwealth's motion to amend an information to remove a charge of driving "under the combined influence of alcohol and a controlled substance to a degree which renders the person incapable of safe driving" and to add a charge of driving "under the influence of alcohol to a degree which renders the person incapable of safe driving." **Plybon**, 421 A.2d at 225. At the time of the case, the pertinent statutory provisions were, respectively, 75 Pa.C.S § 3731(a)(3) and § 3731(a)(1). These provisions were subsequently repealed by P.L. 120, No. 24, § 14, Sept. 30, 2003, effective Feb. 1, 2004, and were replaced with similar provisions found at 75 Pa.C.S. § 3802(a)(1) and § 3802(d)(3). Like this case, the Commonwealth sought to amend its information after the close of its case and the defendant had demurred to the evidence. However, unlike here, the crimes were materially different where one crime required the evidence of one being under the influence of alcohol and the other demanded proof of one being under the combined influence of alcohol *and* controlled substance. Accordingly, **Plybon** is distinguishable from the present matter because there was a complete change in the evidence itself.

[8] **See** Trial Court Opinion, 7/17/2017, at 6.

- 13 -

not require that a driver be impaired; rather, it prohibits the operation of a motor vehicle by *any* driver who has *any* amount of specifically enumerated controlled substances in his blood, regardless of impairment.") (italics in original); *see also Commonwealth v. Hutchins*, 42 A.3d 302, 311 (Pa. Super. 2012) (same), *appeal denied*, 56 A.3d 396 (Pa. 2012).[9]  Therefore, Laureano's defense for both provisions would be the same – that the controlled substance, whether it be the active ingredient of marijuana or the metabolite, was not in his system at the time of the incident.

Lastly, we believe the potential for prejudice was not heightened by the Commonwealth's "11th hour" request to amend.  We find:  (1) the amendment did not change the factual scenario supporting the charges; (2) the amendment did not add new facts previously unknown to Laureano; (3) the entire factual scenario was developed during the suppression hearing; (4) the description of the charges did not substantially change with the amendment; (5) a change in defense strategy was not necessitated by the amendment;

_____

[9]   We note the language in Section 3802(d)(1) is different than in other sections of the DUI statute.  **See** 75 Pa.C.S. § 3802(a)(1) ("An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol **such that the individual is rendered incapable of safely driving**, operating or being in actual physical control of the movement of the vehicle.") (emphasis added); 75 Pa.C.S. § 3802(d)(2) ("The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's **ability to safely** drive, operate or be in actual physical control of the movement of the vehicle.") (emphasis added).  **See also Commonwealth v. Griffith**, 32 A.3d 1231 (Pa. 2011) (comparing the different provisions of Section 3802).

and (6) the timing of the Commonwealth's request for amendment allowed for notice and preparation. *Sinclair*, 897 A.2d at 1223. With respect to the sixth factor, it merits mention that the purpose of Rule 564, "to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed,"[10] was not defeated where Laureano was put on notice regarding the results of that lab report and his blood test came back positive for a metabolite of marijuana because defense counsel acknowledged that he had obtained the lab report at the time of discovery. *See* N.T., 5/12/2012, at 148. As such, this was not surprise information that would have required more time to prepare for trial. Additionally, we note this was a non-jury trial, therefore, there would have been no confusion on the part of the jury regarding the different crimes and a need for an amendment. Furthermore, while there are cases, as cited by the trial court,[11] that have reversed a decision to allow a tardy motion to amend a criminal information, there are also cases upholding belated amendments. *See i.e.*, *Commonwealth v. Mentzer*, 18 A.3d 1200, 1201 (Pa. Super. 2011) (affirming decision to amend information which requested at the time of sentencing and concerned the grading of the DUI offense); *Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa. Super. 2006) (concluding grant of

---

[10] *Sinclair*, 897 A.2d at 1221.

[11] Trial Court Opinion, 7/17/2017, at 7-10.

amendment just before closing arguments was proper, even where the elements of the offenses differed, because appellant had prompted the need for an amendment by his own inculpatory testimony), *appeal denied*, 927 A.2d 624 (Pa. 2007). Therefore, we conclude the trial court erred in granting Laureano's post-sentence motion requesting a judgment of acquittal and reversing its prior ruling granting the Commonwealth's motion to amend the criminal information.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/18